JOHN ALBERT BARG v. E. F. BOUSFIELD and Another.[1]

June 30, 1896.

Nos. 9985—(218).

| 65 | 355 |
| 66 | 21 |

| 65 | 355 |
| d76 | 172 |

| 65 | 355 |
| 78 | 180 |

| 65 | 355 |
| f81 | 48 |

| 65 | 355 |
| 86 | 463 |

**Action by Infant for Personal Injuries—Discretion Required—Contributory Negligence.**

Rule applied that a youth between 15 and 16 years of age is required to exercise the amount of discretion which a person of his age and experience should exercise, and no more, and whether plaintiff was guilty of contributory negligence *held* to be a question for the jury.

**Same—Negligence of Master—Failure to Warn.**

Whether or not his employer was guilty of negligence in failing to instruct such youth, and warn him of the dangers of working around machinery with which he was not familiar, *held* a question for the jury.

[1] Reported in 68 N. W. 45.

### Same—Independent Contractor or Agent.

Rule applied that, where one who performs work for another represents the will of that other, not only as to the result, but also as to the means by which that result is accomplished, he is not an independent contractor, but the agent of that other, who is responsible for his acts and omissions within the scope of his authority.

### Same—Indemnity Policy—Defense by Insurer—Admissibility of Evidence.

Plaintiff was employed in defendants' establishment by one Scott, was injured by the latter's negligence, and brought this action to recover damages for the injury, claiming that he was defendants' servant, and Scott was their agent. They denied this, and claimed that Scott was an independent contractor, and plaintiff was in his employ. On the trial, the court received evidence showing that defendants held an indemnity policy, indemnifying them, and holding them harmless "to a certain extent" from liability "by reason of any injury to any employés, including this plaintiff or anybody else that might be in any part of the mill working in that factory," and that the company issuing the policy had undertaken to defend, and was defending, this action for defendants. Nothing further appeared as to the contents of the policy, and it did not appear that such insurer undertook, by the policy, to defend the defendants in all cases in which they might be charged with any such liability. *Held*, the evidence was admissible, as tending to show that the defendants did not regard Scott as an independent contractor.

### Rulings Considered.

Other unimportant rulings considered and disposed of.

### Verdict not Excessive.

*Held*, the verdict as it now stands is not so excessive that this court would be justified in granting a new trial.

Appeal by defendants from an order of the district court for Hennepin county, Jamison, J., denying a motion for a new trial. Affirmed.

*Keith, Evans, Thompson & Fairchild,* for appellants.

*F. D. Larrabee,* for respondent.

CANTY, J. This is an action for personal injury. Plaintiff had a verdict, and from an order denying a new trial defendants appeal.

The defendants are engaged in the business of manufacturing wooden tubs, pails, and other wooden ware. On April 27, 1894, plaintiff, then an infant between 15 and 16 years of age, was employed in their establishment by one Scott, who had charge of one department of the business, and who put plaintiff to work carrying wooden bottoms from the car over to one of the saws. Under one of the saws was placed a

tub to catch the splints, scraps, and sawdust which fell from the saw. When the tub was full, Scott ordered plaintiff to take it away from under the saw. In attempting to do so, he put his right hand between the pile of refuse in the tub and the under side of the rapidly revolving saw, when his little finger, the next one, and the middle finger below the middle joint were cut off by the saw. Plaintiff claims that he had never worked around machinery before, did not know or appreciate the danger of doing so, and was not instructed or warned as to these dangers. He claims that Scott was negligent in failing to inquire as to his knowledge of these dangers, and in failing to instruct him as to the same, and that defendants are liable for Scott's negligence. On the trial, plaintiff testified that there was, or appeared to be, about five inches of space between the pile of refuse and the saw.

"Q. How far from the splints up to the saw? A. About five inches. * * * Q. Well, how did you happen to get your hand cut, and what were you doing? A. I was going to squeeze the splints, and the saw came down further than it appeared to come."

1. We cannot hold, as a question of law, that he was guilty of contributory negligence. It may well be that a boy of his age, who had never worked around such saws, and was not familiar with them, would fail to realize that the teeth of a rapidly revolving saw are invisible, and would fail to learn that there was any danger in putting his hand where he could see nothing to interfere with it. He had worked in the factory only about one hour after he was hired until he was injured. The law did not require him to exercise the care and discretion that a person of mature years should. It required him to exercise such care and discretion as a boy of his age and experience should exercise, and no more. Wood, Mast. & Serv. § 350. Whether he exercised this amount of care and discretion was, on the evidence, a question for the jury.

2. We are also of the opinion that it was a question for the jury whether or not Scott was guilty of negligence in failing to instruct the boy, and warn him of the dangers before sending him to empty the tub. Kaillen v. Northwestern Bedding Co., 46 Minn. 187, 48 N. W. 779.

3. The next question in the case is whether the jury were justified in finding, from the evidence, that Scott was the agent or servant of defendants, so that they are responsible for his negligence. It ap-

pears by the uncontradicted evidence that Scott took the work of which he had charge by the piece. Defendants paid him a fixed price for a specified amount of work, and he hired the other employés under him, paid them himself, and retained the profits or suffered the losses which were the difference between the fixed contract price which he received and the amount of wages which he paid. He carried on his operations in one room of defendants' factory. They furnished the machinery, the power, and the material, and there is ample evidence to sustain a finding that they reserved and exercised complete control over the manner of performing the work. The defendants are partners, and each personally superintended, more or less, the work in or about the factory. For a part of this work they employed the laborers themselves, and they let other portions of the work to different parties, on similar terms to those on which they let the part that was let to Scott.

The defendant Bousfield was called for cross-examination, and testified as follows:

"Q. And Mr. McVoy is the superintendent? A. Yes, sir. Q. And in all departments it is done subject to his approval, and he has a right to order it to be done a certain way, has he not, or not to be done a certain way? A. In a general way, yes. Q. It is all done subject to him? A. He has general supervision of the whole business. Q. And this man Scott was under him? A. Yes. Q. And had to do the work subject to his approval? A. Yes, sir. Q. And he had authority to stop Scott, and make him do it in a different way, didn't he? A. Yes. Q. And make him do it as he wanted it done? A. Yes, sir. Q. Now, what department was under Scott? A. What we call the bottom and cover department. * * * Q. You said that all the work done by Scott and those under him is 'all done subject to the approval of the superintendent, McVoy? A. I say all that Mr. Scott does is subject to the approval of Mr. McVoy. Q. All that is done by Scott individually and those working under him? A. Yes. Q. And McVoy has authority at all times to superintend the work, has he not, * * * and all portions of it? A. He has. Q. And has a right to direct when things shall be done? A. He has; yes, sir. Q. When they shall be done, and how they shall be done? A. Yes, sir. Q. And the manner in which it shall be done? A. Yes. * * * Really he hasn't any authority to say one word to that boy, you may say. He should do it through Mr. Scott. Q. You say he has no right to boss those boys at all? A. No. Q. But he has a right to say to Scott: 'You must not have it done this way, you must have it done so and so.' That is right, isn't it? A. That is right,—do it through Scott. * * * Q. What

does he [McVoy] go in there at all for? A. To know what is going on, and get a general supervision. He has general supervision of the whole of it. Q. What do you mean by saying he has general supervision? A. To see that everything is going right. Q. In what respect? A. To see that they are using our materials properly. Q. In what way? A. And not wasting it. Q. Well, what other respect? What right has he there, except to see that he is not wasting material? A. To see that we get,—well, certain results. Q. And in what other respects? A. Well, to see that things are going right generally. Q. Every respect? A. In every respect; yes. Q. Suppose they are not going right in any respect whatever, then what? A. It would be his duty to call the contractor's attention to it. Q. And what would he do? What authority would he have over the contractor in a case of that kind? A. If he did not comply with it, he could discharge him. Q. Then he had a right to make him do things just as you wanted them done? A. Certainly. Q. Not only one thing, but every thing in connection with his work there,—he had a right to make him do it just as you wanted it done? A. Certainly. Q. You reserved that right there to make him do it just as you wanted it done? A. Always. Q. In every particular? A. Yes, sir. * * * Q. But, in exercising the right, to exercise that privilege to get a right result, you did have the right to direct him, and control him in every particular, in the doing of that work and in the management and use of the machinery, and, if he didn't obey your orders, you had a right to discharge him? A. Mr. Scott? Q. Yes, sir. A. Yes, sir."

It is true that, on redirect examination, Bousfield repeatedly asserted that neither he nor McVoy had any control over Scott, except to see that he accomplished a certain result; but the effect to be given to the contradictory statements of the witness was a question for the jury. The testimony of the defendant McVoy was of somewhat the same character. There was also evidence tending to prove that Bousfield had stated to other parties that plaintiff was working for him at the time of the injury. While the undisputed evidence shows that Scott was to some extent a contractor, yet the jury were justified in finding, from the evidence, that he was not so far an independent contractor that defendants were not responsible for his acts.

"The true test, as it seems to us, by which to determine whether one who renders service to another does so as a contractor or not, is to ascertain whether he renders the service in the course of an independent occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished." 1 Shearman & R. Neg. (4th Ed.) § 164.

The evidence tends to prove that Scott represented the will of the defendants, not only as to the result, but also as to the means to accomplish that result.

4. The following rulings of the court, made on the cross-examination of Bousfield, are assigned as error:

"Q. You had what is known as an accident insurance policy,—your firm,—did you not, for which you paid a consideration, and by which this insurance company agreed to indemnify you, and hold you harmless to a certain extent by reason of any injury to any of the employés, including this plaintiff or anybody else that might be in any part of the mill working in that factory, did you not? (Objected to as incompetent, irrelevant, and immaterial. Overruled, and exception.) A. We have such a thing. Mr. Evans: Was that policy in writing? A. Yes, sir. Mr. Evans: We make the further objection to this testimony, as to the character of that policy, as incompetent, irrelevant, and immaterial. The Court: Well, there is nothing before the court now. The question was asked and answered. Q. And under and by virtue of that policy this case is being defended here by these attorneys, is it not? (Objected to as incompetent, irrelevant, and immaterial. Overruled, and exception.) A. I am spending my time here. Mr. Evans: And on the further ground that the terms of that policy appear to be in writing, and that writing is not here. The Court: I think he may answer the question. Mr. Evans: Exception. A. That is the case, I believe. Q. It is by virtue of that contract that they are appearing here, defending this case,—the insurance company? A. Yes, sir. Mr. Evans: The same objection and exception."

Evidence of this character is highly prejudicial, and it certainly was error to admit it unless it was competent. But we cannot say that it was not competent. Except as above stated, the nature of the indemnity furnished to defendants did not appear, but it seems to us that the evidence had some tendency to prove that defendants regarded themselves liable for the negligence of Scott, and the insurance company did, also. It does not appear that the insurance company undertook by the policy to defend the defendants in all cases where they were charged with any such liability, and we cannot so presume. It is fair to presume that defendants required the insurance company to defend them. It seems to us that the conduct of defendants in this respect had some tendency to show that they did not regard Scott as an independent contractor, and, as to that issue, we are of the opinion that the evidence was admissible. The objection that the evidence was secondary came too late to affect the

first questions, and it had no application to the subsequent questions, because they did not call for the effect or contents of any written instrument.

5. There was evidence in the case tending to prove that the saw was partly covered, and defendants assign as error the refusal of the court to charge that, if the jury found that the saw was covered, plaintiff could not recover. The saw was not covered at the point where plaintiff's hand came in contact with it, and the question of whether it was covered at some other point is not decisive of the case. Therefore the request was properly refused. Appellants assign as error the refusal of the court to charge a number of other requests. But all the questions worthy of consideration involved in such refusal have already been disposed of.

6. The refusal of the court below to grant a new trial on account of excessive damages is also assigned as error. The jury awarded plaintiff the sum of $5,125, and, on the motion for a new trial, the court ordered that the same be granted unless plaintiff, in writing, would remit all above $4,000, which he did. We cannot say that, on the evidence, a verdict for $4,000 is so excessive that this court should interfere to set it aside.

This disposes of all the questions raised having any merit, and the order appealed from is affirmed.