[L. A. No. 1141.    Department One.—October 10, 1903.]

## PATRICK LAWRENCE ROCHE, Respondent, v. LLEW-ELLYN IRON WORKS COMPANY, Appellant.

NEGLIGENCE—MASTER AND SERVANT—SAFE PLACE TO WORK—LIMIT OF DUTY OF MASTER—IMPUTED KNOWLEDGE.—The rule that it is the duty of the master to provide a safe place in which to work only applies when the place is furnished and the appliances prepared by the master, and the doctrine of imputed knowledge by the master of actual conditions is inapplicable where no duty rests upon the master to make the place safe.

ID.—WORK DONE BY FOUNDRY FOR ELECTRIC COMPANY—DEFECT IN BOILER—INJURY OF SERVANT FROM STEAM—MASTER NOT BOUND TO INQUIRE.—Where work was done by a foundry for an electric company by a proficient servant of the foundry in rolling tubes for a defective boiler on the premises of the electric company, the owners of the foundry were not bound to inquire of the safety of the actual conditions under which the servant was working, but had the right to assume, in the absence of actual notice, that there was no defect in the boiler, pipe, or valves that would make it dangerous to work in the boiler when the steam was turned off therefrom, and the master is not responsible for injury to the servant by the escape therein of steam from another boiler belonging to the electric company, merely because the place of work was thereby rendered unsafe.

ID.—IMPROPER EVIDENCE—SIMILAR INJURY — CROSS-EXAMINATION.— Evidence was not admissible as against the master, who had no actual knowledge of a prior similar injury in the same boiler to show the fact of such injury, and it was not within the range of

proper cross-examination of the secretary of the defendant to show that he subsequently acquired knowledge of the prior accident, or that he admitted the subsequent discovery of it in his report to an accident insurance company.

ID.—IMPROPER INSTRUCTIONS—IMPUTATION OF KNOWLEDGE—DUTY OF WARNING.—Instructions conclusively imputing knowledge by the employer of any defect or danger upon the premises where the defendant was working, and making it his duty to warn plaintiff thereof without reference to his knowledge thereof, and without reference to the cause of the injury alleged in the complaint, were prejudicially erroneous.

ID.—EVIDENCE—DEFENSE BY ACCIDENT INSURANCE COMPANY—GENERAL OBJECTION.—Evidence of the request of the defendant, who was carrying an accident insurance policy to indemnify it against accidents to its employees, to the accident insurance company to defend an action brought against it by the plaintiff, is irrelevant and inadmissible for any purpose, and a general objection thereto is sufficient.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. W. F. Fitzgerald, Judge.

The facts are stated in the opinion of the court.

E. W. Freeman, John T. Jones, and Lucius. K. Chase, for Appellant.

The defendant was not bound to investigate the premises of the electric company, which alone, as proprietor of the premises, was bound to exercise reasonable care toward the servant of its customer or contractor. (1 Thompson on Negligence, 968, 978, 979; *Coughtry* v. *Globe Woolen Co.,* 56 N. Y. 124.[1]) The plaintiff was bound to prove his case as laid, and to show that the accident arose only from the cause alleged. (*Musbach* v. *Wisconsin Chair Co.,* 108 Wis. 57; *Bien* v. *Unger,* 64 N. J. L. 596; *Grant* v. *Pennsylvania etc. Canal Co.,* 133 N. Y. 657; *San Antonio and Pacific R. R. Co.* v. *De Haven,* 93 Tex. 74; *Conrad* v. *Gray,* 109 Ala. 130; *Arcade File Works* v. *Juteau,* 15 Ind. App. 460; *The Lydia M. Deering,* 97 Fed. 971.) The plaintiff being competent for the work, and having equal means of knowledge with the defendant, assumed the risk. (*Lyons* v. *Knowles,* 32 Pac. (Cal.) 884; *Wright* v. *Pacific*

[1] 15 Am. Rep. 387.

Coast Oil Co., 53 Pac. (Cal.) 1090; McGlynn v. Brodie, 31 Cal. 377.)   The testimony as to the prior accident was not admissible.   (Bien v. Unger, 64 N. J. L. 596.)   The testimony as to the agreement between defendant and the accident insurance company was incompetent and prejudicial.   (Greenleaf on Evidence, 16th ed., sec. 195d; Chielinsky v. Hoopes etc. Co., 1 Marv. (Del.) 273; Barrett v. Bonham Oil etc. Co., (Tex. Civ. App.), 59 S. W. 602; Sawyer v. Arnold Shoe Co., 90 Me. 369; Kellogg v. New York Cent. etc. R. R. Co., 79 N. Y. 72; Harding v. Townshend, 43 Vt. 536.[1])

Anderson & Anderson, and Joseph Scott, for Respondent.

The gist of the action is the negligence of the defendant in failing to warn plaintiff of the extra hazard.   (Baxter v. Roberts, 44 Cal. 187, 193;[2] Ingerman v. Moore, 90 Cal. 410;[3] Jones v. Florence Mining Co., 66 Wis. 277;[4] Elledge v. National City etc. Ry. Co., 100 Cal. 282;[5] Ryan v. Los Angeles Ice etc. Co., 112 Cal. 244; Verdelli v. Grays Harbor etc. Co., 115 Cal. 317.)   The testimony as to the defense by the insurance company was admissible as tending to show employment.   (Barg v. Bonfield, 65 Minn. 355.)

ANGELLOTTI, J.—This action was brought to recover damages for personal injuries alleged to have been suffered by plaintiff by reason of the negligence of his employer, the defendant corporation.   The jury rendered a verdict in favor of plaintiff, and from the judgment entered thereon and from an order denying a new trial defendant has appealed.

The defendant was engaged in the business of conducting a foundry, and one department of its business was devoted to the manufacture and repair of boilers.   On November 23, 1899, plaintiff, who was a man of twenty-four years of age, and who was then, and for seven months preceding had been, in the employ of defendant as a boiler-maker's helper, was directed by defendant to take a helper and go to the premises of the Los Angeles Electric Company, a corporation, to roll tubes in some of the boilers of said elec-

[1] 5 Am. Rep. 304.                   [4] 57 Am. Rep. 269.
[2] 13 Am. Rep. 160.                  [5] 38 Am. St. Rep. 290.
[3] 25 Am. St. Rep. 138.

tric company. This order was given plaintiff by defendant in pursuance of an order received by it from the electric company to send a boiler-maker and helper to roll tubes in two of its boilers, designated in the order as "Boilers 5 and 6." The work itself—i. e. the rolling of the tubes—was in no degree dangerous, except so far as the place where it was to be done—viz., the inside of the boiler—made it dangerous. Plaintiff was proficient in the work of rolling tubes, and had, while in defendant's employ, done this work in these very boilers of the electric company four or five times previously.

In obedience to the instruction given him, plaintiff, with a helper, went to the premises of the electric company, and was shown by the fireman of that company the work to be done, the fireman going into the furnace of the boiler with plaintiff and his helper, and pointing out the defective tubes needing attention. The boiler, which was one of fifteen boilers in the boiler-room, each of which was separately connected with the steam-main in the engine-room, had then been cut off from the main steam-pipe, and was apparently in condition to enable the work to be done upon it.

Plaintiff entered the boiler by means of a mud-drum at the bottom thereof, and had just commenced work, when a quantity of hot water and steam was precipitated into the boiler from the pipe connecting the boiler with the main steam-pipe, and he was severely scalded.

It appeared that at the point where the steam-pipe from this boiler connected with the main steam-pipe in the engine-room there was a valve by which to cut off the connection between this boiler and the main steam-pipe, and that in the pipe leading from the main steam-pipe to this boiler there was a valve known as the bleed or drain valve, used, as the name indicates, for the purpose of draining the pipe leading into the boiler. This valve was in the boiler-room portion of such pipe, which ran from the boiler-room into the engine-room and there connected with the main steam-pipe.

The alleged negligence of defendant complained of was its failure to warn and instruct plaintiff of the dangerous nature of the work and the precautions to be taken to insure safety, the allegations of the complaint in that behalf, as the same was amended during the trial, being substantially

as follows, viz: It was alleged that the work ordered done by defendant was dangerous, in that, unless precautions were taken and valves properly arranged and adjusted, the water in the pipe was liable to become heated and overflow hot steam and hot water into the boiler; that a person experienced in said matters, or properly instructed therein, could have guarded against the same by examining the said valves, and properly arranging and adjusting them, and securing and strengthening the same if necessary; that the plaintiff at said time was without such knowledge or information or experience as would have enabled him to guard against such danger; that defendant well knew the said dangerous character of the work and the said danger incident thereto, knew what was proper to be done to avoid said danger, and knew the plaintiff's want of knowledge and experience, and negligently failed to warn plaintiff thereof, or to give him such instruction or information as would have enabled him to guard against the dangers incident to said work; that by reason of such negligent failure to warn and instruct plaintiff "the said steam valves connected with and operated in connection with the said boiler *were improperly arranged and adjusted,* and by reason thereof caused the water in said pipe leading into said boiler with which said valves were connected to become heated and to overflow into said boiler a large quantity of steam and boiling water, and precipitated the same upon plaintiff."

The sole basis of plaintiff's claim against defendant, then, as disclosed by the complaint, was, that defendant neglected to so warn and instruct him that he could have seen that the valves were properly arranged and adjusted before entering the boiler, and that such neglect caused the injury. No other cause for the accident than the improper arrangement and adjustment of the valves was assigned by the complaint and such improper arrangement and adjustment was alleged to be wholly due to defendant's neglect to warn and instruct him.

The theory of the plaintiff as to the cause of the flow of water and steam into the boiler was, as shown by the evidence introduced in his behalf, that, although the cut-off valve had been closed and the boiler-pipe thereby discon-

nected from the main steam-pipe, the drain-valve had not
been opened at the time plaintiff went into the boiler; that
consequently the pipe had not been drained, and that the
water standing therein had become heated to the boiling-
point and some thereof had been thrown over into the boiler.
This theory was based entirely upon the testimony of the
witness Vivian, chief engineer of the electric company, who
was the only witness examined by plaintiff as to the cause
of the accident, and the complaint was amended as to the
cause of the accident after he had testified, to make it con-
form to the proofs.  This theory was entirely within the
allegations of the amended complaint.

There was some evidence which would justify the con-
clusion that it was the duty of the defendant to warn and
instruct an inexperienced and ignorant employee as to the
necessity of ascertaining that the cut-off valve was closed
and the drain-valve open before he entered a boiler con-
nected with and operated with other boilers, and this because
the danger to be guarded against by such warning and
instruction was one ordinarily incident to work on the
interior of any boiler so connected, however perfect and
free from defect the boiler and its connections might be in
every part.

So far, therefore, as the verdict may be founded upon
the theory that the accident was caused by the neglect of
defendant to warn plaintiff as to the necessity of opening
the drain-valve before going into the boiler, it might be
held to be sustained by the evidence, although, in view of
our conclusions upon other points, it is not necessary to
determine this question.

The court below was, however, of the opinion that the
defendant, although without actual knowledge thereof, was
conclusively presumed to know all the special conditions
existing at the place where the work was to be done, so far
as it might have ascertained those conditions by investiga-
tion and inquiry; that it was conclusively presumed to know
of any special cause of danger, arising from whatsoever
cause, which it might have ascertained by such investiga-
tion; that for any failure to warn or instruct plaintiff of
any such condition or cause peculiar to the boiler upon which

plaintiff was to work, and the valves and pipe appurtenant thereto, which it might have so ascertained by investigation, and which caused the injury, and which might reasonably have been guarded against, the defendant was liable.

These views of the trial court, apparent in rulings on evidence and instructions to the jury, were clearly erroneous, and resulted in erroneous rulings that we are unable to say were not prejudicial, and which render it impossible to determine upon what theory the verdict was founded.

The doctrine of imputed knowledge as to actual existing conditions necessarily rests upon the duty of the master to furnish his employee with a safe place in which to work, and is inapplicable where there is no such duty.    It is ordinarily the duty of the master, as the court instructed the jury, to furnish his employees a suitable and safe place in which to work, and suitable appliances wherewith to perform the work; and where such duty exists the master is held to the exercise of care in making the place and appliances safe, and cannot be heard to say that he did not know of defects and dangers that he might have ascertained by the exercise of reasonable care.    But the rule that the employer must furnish a safe place in which to work has a well-established limitation.    It was pointed out in *Callan* v. *Bull*, 113 Cal. 593, that the liability of a contractor for an injury resulting from the use of defective materials in his work rests upon his right to select the materials, and that he can be held liable only when he has such right, the contractor, of course, always being presumed to have such right of selection.    The court further said in that case that "The rule which requires the master to provide a safe place and safe appliances for the servant is applied when the place in which the work is to be done is furnished or prepared by the master, . . . or when the machinery or other appliances . . . are furnished by the master."    *McCall* v. *Pacific Mail S. S. Co.*, 123 Cal. 42, was an action against both owner and contractor, and involved a question as to defective materials.    The court there said, speaking through Mr. Justice Henshaw: "But the rule is too firmly settled to be open to successful attack, that where one agrees to furnish to a contractor material or appliances which he is

to use in the performance of his task, the principal is liable
to the servants and agents of the contractor for injuries
which may result to them from his negligence or inade-
quate performance of his contract in this regard.'' This
liability of the owner is based, as was pointed out in the
opinion in that case, on different grounds by different courts,
but the principle was stated to be settled beyond the pos-
sibility of successful controversy. Many cases are cited in
support of this principle. It was further said therein that
where the duty rested upon the principal to furnish the
appliances, and the corresponding · duty rested upon the
contractor to use the appliances furnished, without discre-
tion as to their fitness or suitability, the principal alone
would be liable to employees of the contractor for any dam-
age resulting to them from the defective appliances. The
same principle would seem to be applicable, so far as the
safety of the place where the work is to be done is con-
cerned, when the work is to be done for another by the
contractor, in a place not of his selection or under his con-
trol. That the person in control of premises who has
engaged the contractor to do certain work thereon is under
the obligation to furnish the employees of the contractor a
safe place in which to work, so far as reasonable care on
his part will enable him to so do, and that he will ordinarily
be liable to such employees for any failure in this regard,
is recognized by the authorities. (See Wood on Law of
Master and Servant, secs. 337, 338, and cases there cited.)
That the contractor himself will not under such circum-
stances be liable to his employees on account of the unsafe
condition of the place, in the absence of actual notice of a
defect, unless he has specially, or upon facts found impliedly,
assumed such obligation, was held by the supreme court of
Connecticut in a recent case, where it was said that the
reason for the rule which requires the master to exercise
due care to provide his servants a safe place in which to
work is, that the master is ordinarily in possession or control
of the premises where the work is done, and that the duty
of the master to furnish a safe place flows from and is
measured by his possession, use, and control of the premises.
(See *Channon* v. *Sanford Co.,* 70 Conn. 573.[1])

[1] 66 Am. St. Rep. 133.

We are satisfied that when the defendant was called upon by the electric company to send men to roll tubes in certain boilers of that company,—a work absolutely without danger so long as the place in which it was to be done was kept in proper condition,—which boilers remained constantly under the control and in the possession of the electric company, and were prepared for the work by the electric company, the defendant had the right to assume, in the absence of actual notice, that there was no defect in the boiler, pipe, or valves that would make it dangerous to work in the boiler, and knowledge of any such defect could not be imputed to it, for it was under no obligation to make inquiry in regard thereto. In considering the rulings and instructions of the trial court, it must be borne in mind that the testimony of plaintiff's witness Vivian as to the cause of the accident was flatly contradicted by witnesses for defendant, who testified that the drain-valve was taken off when the boiler was prepared for the work, and remained off until after the accident. If this testimony was true, the accident was not caused by the failure to open the drain-valve, as stated by Vivian, and the cause thereof is entirely unexplained by the evidence. The accident may have been caused by some one in the engine-room opening the cut-off valve for a moment, or by some defect in one of the valves, or in some other way.

It is clear that plaintiff should not have been allowed to show by witness Llewellyn, the secretary of defendant, that when he made his investigation after the accident, for the purpose of making a report to the accident insurance company, he ascertained that there had been an accident prior to the accident complained of in this action, at the same place, in the same boiler, and in which a man had been scalded in a similar manner, some eighteen months before. The object of this testimony was to show that for some reason this boiler was specially dangerous, that defendant could have ascertained the fact of prior accident, which would indicate such danger, by inquiry before the accident complained of, and that therefore it was its duty to know of it. This was substantially the object stated by counsel at the time it was proposed to show the acquiring of

this knowledge by defendant's secretary. For the reasons already stated, the evidence was inadmissible. The defendant could not be held to have had knowledge of the prior accident merely because it might by inquiry have acquired such knowledge, for it was under no duty to make the inquiry.

It is now urged that it was legitimate cross-examination of Llewellyn, who had been called by plaintiff as a witness to testify as to the inquiries that he made after the accident and the information he then acquired. It was expected by plaintiff to show that in his report to the accident insurance company Llewellyn admitted knowledge of the prior accident, acquired, concededly, subsequent to this accident. The report, or a copy, was produced by defendant, in response to plaintiff's demand, while Llewellyn was on the witness-stand. The copy so produced contained no statement as to a former accident, and plaintiff was permitted to cross-examine his own witness as to whether or not the report sent in to the accident company did not contain such a statement; and finally, the witness, not being able to definitely answer, was asked whether he did or did not, as a matter of fact, ascertain the fact of the prior accident while he was making his investigations for the purpose of making his report. Under proper objection and exception, he answered this question in the affirmative. It was, as we have seen, immaterial whether or not the report sent to the accident company contained an admission of knowledge of a prior accident acquired subsequent to the accident complained of. The fact that he acquired such subsequent information being inadmissible, the fact that he admitted in his report that he had acquired such information was likewise inadmissible. The testimony was not within the range of legitimate cross-examination, and the error cannot be held to have been without prejudice to defendant's rights.

At the request of plaintiff, the court instructed the jury as follows, viz.: "You are instructed that the employer is presumed to know and in law knows that which it is his duty to know, viz.: *whatever may endanger the person and life of his employee in the discharge of his duties.*" This instruction apparently conclusively imputes to the employer knowl-

edge of any defect or danger, however latent and however beyond discovery by the exercise of reasonable care. It certainly imputes to the employer knowledge of any defect in the place where the work is to be done which might reasonably have been ascertained by investigation and inquiry. It shows the prejudicial effect of the evidence of Llewellyn as to the prior accident that was improperly admitted. As already shown, it was not a correct statement of the law applicable to this case, and prejudicial error was committed in giving it.

The fifteenth instruction requested by plaintiff, and given by the court, was also erroneous in that it, in connection with the eighth instruction, held defendant responsible for a failure to warn plaintiff of dangers in the place of work, concerning which it did not actually know, but which it might have ascertained by examination and inspection.

By the twentieth instruction the jury were told that the mere mechanical cause of the accident was immaterial, provided that cause was reasonably within the allegations of the complaint. Exactly what was meant by this is not entirely clear. After instructing the jury in this manner as to the mere mechanical cause, the court in the same instruction said: "And further, that if you find from the evidence that the accident resulted from *any* cause which might reasonably have been guarded against, and was due to dangers incident to the work, of which defendant knew or *should* have known, and that those dangers were unknown to plaintiff, and that defendant knew or should have known that such dangers were unknown to plaintiff, and that defendant failed to warn or instruct plaintiff as to such dangers, then you should find for plaintiff."

Taken as a whole, we are of the opinion that the instruction was open to the same objection as the fifteenth instruction, already noticed, and, further, that the jury would be warranted thereby in finding for the plaintiff, even though the accident resulted from some cause not alleged in the complaint.

The defendant requested the court to instruct the jury as follows: "You are further instructed that unless you find that the said steam-valves connected with and operated in

connection with the said boiler were at the time of the accident improperly arranged or adjusted, and that by reason thereof the water in said pipe leading into said boiler was caused to become heated and overflow into the said boiler steam and boiling water, you will return a verdict for the defendant and against the plaintiff.''

This instruction was refused. It was drawn in strict accord with the allegations of the complaint as to the cause of the accident and the theory of plaintiff as to such cause, and should have been given, unless it must be construed as placing the burden upon plaintiff to establish that *both valves* were improperly arranged or adjusted, and that both steam *and* boiling water overflowed into the boiler. The objections of plaintiff to this instruction in these respects are probably well founded, and the refusal of the court to give the same as requested was therefore not erroneous, but the failure of the court to modify the instruction or to give a correct one covering the same ground tends to support the theory evidenced by other instructions, that the court did not consider that the plaintiff was confined to the allegations of the complaint as to the cause of the accident.

A report of the defendant as to the accident, made by the secretary to the Frankfort Accident, Marine, and Plate-Glass Insurance Company, was received in evidence over the objection and exception of defendant. It was offered as an admission by defendant of certain matters stated therein. So far as it contained admissions of the defendant as to matters material and relevant to the controversy, we are aware of no rule of law that would have justified its exclusion, and the objection to the report as a whole was properly overruled.

But subsequently, upon cross-examination of the president of defendant, R. Llewellyn, he was asked by plaintiff's counsel: ''Mr. Llewellyn, isn't it a fact that your corporation is insured against accident to its employees by the Frankfort Accident, Marine, and Plate-Glass Insurance Company?'' This was objected to as ''incompetent, irrelevant, and immaterial, not an issue in this case, and not cross-examination.'' The objection being overruled, witness answered: ''Yes, sir.'' He was then asked, ''And was so at that time?'' And, without objection, answered, ''Yes, sir.'' He was then asked:

"Now, is n't it a fact, Mr. Llewellyn, that Mr. Freeman here is defending this action on behalf of that corporation at your request?" This was objected to as "incompetent, irrelevant, and immaterial, and not tending to prove or disprove any issues in this case," and, the objection being overruled, the witness answered, "Yes, sir." As was said by the supreme court of Minnesota in *Barg* v. *Bousefield,* 65 Minn. 355, cited by plaintiff in support of his contention that this evidence was properly admitted, evidence of this character is highly prejudicial, and it is error to admit it unless it is competent. (See, also, *Sawyer* v. *Arnold Shoe Co.,* 90 Me. 369.) The first question asked was plainly not cross-examination. Plaintiff's attorney insisted at the time that it was cross-examination on the question as to whether or not plaintiff was in the employ of defendant at the time of the accident. There was nothing in the testimony of the witness on direct examination that could be construed as an intimation that the plaintiff was not in defendant's employ at the time of the accident. The question was clearly understood as referring to the time of the accident, as is apparent from the conversation between court and counsel at the time, although it did not in terms so refer, and the objection, ruling, and exception must be held applicable also to the next question, "And was so at that time?" which was put merely to remedy the defect in the first question that had already been answered. The objection to the remaining question omitted the specification that it was not cross-examination. The question, then, is as to the right of the plaintiff to show that the action was being defended by an accident insurance company at the request of the defendant. It has been held that evidence that defendant carried an accident insurance policy to secure it against losses which it might sustain by reason of personal injuries received by its employees is not admissible as proof tending to show negligence. (*Barrett* v. *Bonham Oil etc. Co.,* (Tex. Civ. App.) 57 S. W. 602.) And ordinarily such evidence would appear irrelevant to any issue in an action by an employee for damages. (See Greenleaf on Evidence, 16th ed., sec. 195d; *Sawyer* v. *Arnold Shoe Co.,* 90 Me. 369.) This is admitted by plaintiff for the purposes of this case, but it is claimed that such evidence, with the further evidence that defendant had called in the insurance company to defend the

action, tends in some measure to prove that the plaintiff was in defendant's employ at the time of the accident, which, it is claimed, was one of the issues in this case. The facts in the case of *Barg* v. *Bousefield*, 65 Minn. 355, relied upon by plaintiff in this connection, were materially different from those of the case at bar. There defendants claimed that the plaintiff was the employee of one who had charge of one department of their factory, employing and paying the men working therein, and who was paid by the piece for the work done therein. The defendant, Bousefield, having testified fully as to these matters on direct examination, was asked on cross-examination the question: "You had what is known as an accident insurance policy—your firm—did you not, for which you paid a consideration and by which this insurance company agreed to indemnify you and hold you harmless, . . . by reason of any injury to any of *the employees, including this plaintiff or anybody else that might be in any part of the mill working in that factory, did you not?"* and this was followed by the question as to the insurance company defending the case. It was very properly held in that case that the conduct of the defendants there shown had some tendency to show that they regarded themselves as the employers of *all the persons in the mill,*—i. e. the obtaining and holding an employer's policy covering all the persons in the mill. But we are unable to see how the request of one carrying a policy, and indemnifying him against accidents to his employees, made of his insurer, to defend an action brought against him by one claiming to be such an employee, is an admission on his part of the fact of employment, especially where the employment is denied. If plaintiff in such a case succeeds in establishing the truth of his allegation that he was in the defendant's employ, he necessarily comes within the terms of the defendant's policy, and the defendant is indemnified against loss thereby. In such a case the request on the part of the defendant would seem to be simply a notice that an action has been brought against him by one *who claims* to be within the class against which he is indemnified by the policy. We can well understand why the report of the accident made to the insurance company by the defendant might, by reason of statements therein contained, be material upon the issue of employment, but we are of the

opinion that the evidence under consideration did not tend to prove or disprove any of the issues in the case.

It is urged that the general objection of "incompetency, immateriality, and irrelevancy" was not sufficiently specific, and several decisions of this court are cited in support of this claim. These cases, however, go only to the extent of holding that under this objection, a party cannot upon appeal urge an objection which is merely formal or special, and which, if it had been pointed out when the evidence was offered, might have been obviated. (See *Colton L. and W. Co.* v. *Swartz,* 99 Cal. 278.) Where the offered evidence is inadmissible for any purpose the general objection is sufficient. It is further urged that, even if the evidence was inadmissible, its admission was harmless error, as the report from the defendant to the insurance company was already in evidence, and from this report the jury already knew that the defendant was insured. But this evidence went far beyond anything shown by the report. That report, at most, simply showed that defendant made a claim of some nature upon the insurance company because of this accident. The evidence here objected to showed that the claim was well founded, that the defendant did in fact have a policy covering its employees, that the insurance company admitted its liability thereon, and that if plaintiff recovered judgment the defendant would not be injured thereby, but the loss would fall upon the insurance company. It is hardly necessary to point out the prejudicial effect of testimony of this nature.

We have assumed throughout this opinion that the evidence was sufficient to show plaintiff to be an inexperienced man, ignorant of the dangers to be ordinarily guarded against when doing work upon the interior of a boiler, and that defendant had reason to know of this. Whether this assumption is well founded is a grave question under the record before us.

It would seem to be unnecessary to notice any of the other points made.

The judgment and order denying a new trial are reversed.

Shaw, J., and Van Dyke, J., concurred.

Hearing in Bank denied.