[S. F. No. 5383.    In Bank.—October 13, 1911.]

## M. PIERCE, Respondent, v. UNITED GAS AND ELECTRIC COMPANY (a Corporation), Appellant.

Negligence—Attractive Nuisance Doctrine.—The so-called "attractive nuisance" doctrine imposes on one who places an attractive but dangerous contrivance in a place frequented by children, knowing or having reason to believe that children will be attracted to it and subjected to injury thereby, the duty of exercising ordinary care to prevent injury to them.  Such doctrine obtains in this state, and is not confined to cases of turn-tables.

Id.—Electric-Light and Power Company—Wires Along Public Highway—Guy Wire Becoming Detached—Liability for Injury to Children Swinging on Guy Wire—Question of Negligence for Jury—Instructions.—The defendant, an electric-light and power company, maintained a line of highly charged electric wires along the side of a public highway, which were strung about eighteen feet from the ground on the cross-arms of poles of thirty-six feet in height.  The wires were carried on that portion of the cross-arms that extended towards the street.  A guy wire, reaching from the apex of one of such poles to a fastening post some distance away from the line of wires had been maintained by it for several years.  Some two weeks or more prior to the accident in question this guy wire had become detached by some unknown means, without the actual knowledge of the defendant, and at the time thereof was hanging in a natural perpendicular position from the top to the bottom of the pole, its surplus length lying on the ground at the foot of the pole in spiral coils.  While so lying it was without electricity and harmless to any one touching it.  This action, founded on the alleged negligence of the defendant in so maintaining its wires, was brought to recover for the death of two minor children, of thirteen and eleven years of age respectively, who while swinging on such guy wire were killed by an electric shock caused by the guy wire coming in contact with the wires carrying the current.  Held, that under such facts, the questions whether the guy wire, in the harmless condition in which it was hanging, would be likely to attract children and lead them to play with it, and whether in such play it might reasonably be anticipated that it would be brought in contact with the electric wire, and whether the defendant by the exercise of reasonable care would have known of the condition of the guy wire, were questions of fact for the jury and not matters of law, and that an instruction was erroneous which stated that the defendant was guilty of negligence and directed the jury to find for the plaintiff, in the absence of contributory negligence, if they found that the defendant so conducted a powerful current of electricity along such wires, "and also maintained a guy wire or rope without insulation attached above

said electric wires, . . . its lower end reaching to the public streets and lying thereon, and such wire or rope hanging in such close proximity to said electric wires that children playing with such guy wire or rope might readily draw it against such electric wires."

ID.—ATTRACTIVENESS TO CHILDREN OF DETACHED GUY WIRE—REASONABLE ANTICIPATION OF CONTACT WITH ELECTRIC WIRES.—Such instruction was erroneous in that it took entirely from the jury the question whether the guy wire in the locality where it was and hanging as it did would be likely to attract children and lead them to play with it, and the question whether in such play it might reasonably be anticipated that the guy wire would be brought into contact with the electric wire. Unless such questions were answered in the affirmative the defendant was not guilty of negligence.

ID.—ERRONEOUS INSTRUCTION NOT CURED BY OTHER CORRECT INSTRUCTIONS.—The error in giving such instruction was not cured by other instructions, given at the request of the defendant, which correctly stated the law in these respects. Such other instructions simply produced a conflict in the instructions, and it is impossible for the appellate court to say which instructions the jury followed in arriving at a verdict in favor of the plaintiff.

ID.—INSTRUCTION DIRECTING VERDICT FOR PLAINTIFF—ALL ELEMENTS OF LIABILITY MUST BE INCLUDED.—An instruction directing a verdict for the plaintiff in the event that the jury finds certain facts to be true must embrace all the things necessary to show the legal liability of the defendant and to warrant the direction contained therein that the plaintiff is entitled to a verdict.

ID.—UNCERTAIN AND ARGUMENTATIVE INSTRUCTION.—In such a case an instruction that "boys can seldom be said to be negligent when they merely follow the irresistible impulses of their own nature and instincts common to all boys," should have been omitted, as being too uncertain for the purposes of an instruction and partaking too strongly of the nature of argument.

ID.—CONTRIBUTORY NEGLIGENCE OF MINOR—CHILD THIRTEEN YEARS OF AGE.—It cannot be held, as matter of law, that a boy of thirteen years of age had reached such a degree of maturity as not to be within the protection of the "attractive nuisance" doctrine, or that he was guilty of contributory negligence in swinging on such guy wire, in the endeavor to obtain an electric shock by bringing it in contact with the electric wires, and instructions that assume the contrary are erroneous.

ID.—QUESTION OF CHILD'S CONTRIBUTORY NEGLIGENCE FOR JURY.—It was a question for the jury whether the defendant should reasonably have anticipated that the contrivance was of such a nature that it would naturally attract children of such age to play with it, even to the extent of endeavoring to obtain electric shocks, without any realization of the extent of the danger to which they were exposing themselves, and it was also a question for the jury whether such child, under the circumstances shown in this case, did not exercise that

degree of care to avoid injury that a child of his age should exercise under such circumstances.

Id.—Liability for Death of Child Killed While Endeavoring to Rescue Another Child.—Under evidence showing that such child, while swinging on the guy wire, was killed as the result of an electric shock, and while he was lying on the ground holding the guy wire in his hand, another child, in endeavoring to rescue him, was also killed, the defendant cannot be held liable for the death of the latter, unless it was guilty of negligence towards the former. But if it was guilty of negligence towards the former, the mere fact that his negligence contributed to his death would not free the defendant from liability for the death of the latter, unless the latter was also guilty of contributory negligence.

Id.—Evidence that Defendant Was Insured Inadmissible—Eliciting Such Evidence on Examination of Jurors. — Evidence that a defendant in an action for damages is insured against loss by reason thereof is not admissible, and it would be improper for counsel for plaintiff to endeavor to get such a fact before the jury by questions designed solely for that purpose. In the examination of jurors it is ordinarily not essential, in determining their freedom from bias or interest, to ask questions in such a way as to bring the fact of such insurance before the jurors, and unfairness in that respect might be regarded as prejudicial misconduct.

Id.—Measure of Damages—Case Approved.—As to the matter of the measure of damages in an action by a mother for the death of her minor child, the case of *Bond* v. *United Railroads*, 159 Cal. 270, is followed and approved.

APPEAL from a judgment of the Superior Court of Santa Clara County and from an order refusing a new trial. J. R. Welch, Judge.

The facts are stated in the opinion of the court.

Samuel Rosenheim, and Bernard Silverstein, for Appellant.

Frank H. Gould, and Beasly & Fry, for Respondent.

ANGELLOTTI, J.—This is an action by the mother of two minor children, Albert Pierce and Walter Pierce, the father being dead, to recover damages for the death of said children, which is alleged to have been caused by the negligence of the defendant. The jury gave a verdict in favor of plaintiff, fixing the damages for the death of Albert at $4,900, and for the death of Walter at $5,100. A motion for a new trial being made, the trial court ordered a new trial unless plaintiff con-

sented to a reduction of the judgment to $1500 for the death of Albert and $2500 for the death of Walter, an aggregate of $4000. Plaintiff agreed to this reduction, and the court made an order denying the motion for a new trial. This is an appeal from the judgment and from an order denying the motion for a new trial.

Albert and Walter were killed on February 12, 1907. At that time they were respectively thirteen and eleven years of age. They were ordinarily bright and capable boys and obedient and industrious, and Albert, although attending school, assisted in a very small way in the support of the family, consisting of his mother, Walter, another younger brother and himself.

Defendant was a public service corporation engaged in furnishing electric light and power to the city of San Jose and its inhabitants. For the purposes of its business it maintained a line of poles and electric wires along the northeasterly side of the Alameda, a public highway running between San Jose and Santa Clara. The accident occurred near one of these poles. The pole was thirty-six feet high. A cross-arm thereof, on which were strung four electric wires, was eighteen feet from the ground. This cross-arm extended from the pole out into the street, all the portion used for wires being on the street side of the pole, and the first wire on the cross-arm being six feet from the pole. The voltage of the current carried on these wires was between 2200 and 2500. A guy wire reaching from the apex of this pole to a stump or tree in the field on the northeasterly side of the Alameda, forty feet from the pole, where it was fastened, had been maintained by the defendant for several years. Some time prior to the accident, two weeks or more according to the findings of the jury, this wire had by some means unknown become detached from the stump or tree. This had not been done by any officer, agent, or employee of defendant, or with its knowledge or consent, and up to the time of the accident defendant had no actual knowledge that it had been so detached. By reason of being so detached, it hung, on February 12, 1907, in a natural perpendicular position from the top to the bottom of the pole, its surplus length lying on the ground at the foot of the pole in folds or curves in the manner of a wire which had been rolled. As long as it so hung it was without elec-

tricity and was absolutely incapable of harm to any one touching it, and it could become dangerous only by being carried out some distance in the street and brought into contact with one of the electric wires. If so brought into contact with the electric wire next to the pole, it would at once become as dangerous to one touching it as would the electric wire itself. The insulation on such electric wire had become worn or disintegrated.

Late in the afternoon of February 12, 1907, six boys of the neighborhood, ranging from eight to thirteen years of age, were playing in the vicinity of this pole. Two of the boys, Albert Pierce and Marshall Prosser, were playing together in the field a short distance away, while Sylvester Pierce, an eight year old brother of the deceased boys, Stephen Valdez, aged eleven years, Clark MacChesney, aged eight years, and Walter Pierce, were playing with the guy wire by swinging back and forth thereon. These boys had been in the habit of playing with this wire for at least several days. While so playing Sylvester Pierce took the guy wire sufficiently far into the street to bring it lightly in contact with the electric wire, and received a slight shock. He told the other boys about it, encouraging them to try it. Stephen Valdez started to do so, but dropped the wire before making the contact, being evidently apprehensive. Then Clark MacChesney took it and brought the guy wire into contact with the electric wire, and was knocked down by the consequent shock. Thereupon Albert and young Prosser were called over and told about the discovery. Albert was then dared to try it, and, answering "whos' afraid," took hold of the guy wire and drew it taut against the electric wire, and thereby received an electric shock which killed him instantly. He fell to the ground with the guy wire in his hand. Walter, upon seeing his brother fall, at once jumped to his rescue, with the result that he was also killed by a shock of electricity from the wire. Although in answer to special inquiries the jury found that Albert did not know, prior to taking hold of the guy wire, that Sylvester and Clark had received shocks, or that he would receive a shock if he brought the two wires into contact, the evidence shows without conflict that he must have known both these things. The jury found that he had just been informed of the experience of Sylvester and Clark in that regard and had been

dared to try it himself. Of course, he did not appreciate the extent of the danger. But the inference is irresistible that he knew his proposed act would cause him to receive an electric shock, and that he intentionally brought the guy wire into contact with the electric wire for the purpose of receiving a shock. While Walter also knew that electric shocks had been produced by bringing the wires together, the jury was entirely justified in concluding that it had not been shown that he was guilty of contributory negligence.

If the facts detailed are not such as to compel the conclusion as matter of law that Albert was guilty of contributory negligence, we think that a sufficient case was made for the jury to sustain a verdict for plaintiff on account of his death.

It is true that the guy wire hanging suspended from the top of the pole was in no way dangerous as a conductor of electricity unless put by some trespasser to an unwarranted use. It was devoid of electricity, and could not transmit the same to any one touching it, unless it was brought in contact with the electric wires eighteen feet above the street. To accomplish this it was necessary to carry the wire at least several feet out into the street. But by reason of its character, it might reasonably be concluded that, when taken in connection with the proximity of the high power electric wires of defendant, and the ease with which contact between it and the electric wires could be made, it was a dangerous contrivance to children who might lawfully be on the public highway in the vicinity of the pole. The so-called "attractive nuisance" doctrine has been followed in this state and it has not been confined to turn-tables. In *Cahill* v. *Stone & Co.*, 153 Cal. 571, [96 Pac. 84], it was applied in the case of a push-car heavily laden and left standing on a track in a public street, unfastened in any manner. The doctrine was there stated as follows: "One who places an attractive but dangerous contrivance in a place frequented by children, and knowing, or having reason to believe that children will be attracted to it and subjected to injury thereby, owes the duty of exercising ordinary care to prevent such injury to them," and, quoting approvingly from *Barrett* v. *Southern Pacific Co.*, 91 Cal. 302, [25 Am. St. Rep. 186, 27 Pac. 666]: "A child of immature years is expected to exercise only such care and self restraint as belongs to childhood, and a reasonable man must be pre-

sumed to know this and required to govern his action accordingly. . . . And it has been held in numerous cases to be an act of negligence to leave unguarded and exposed to the observation of little children dangerous and attractive machinery which they would naturally go about or upon, and against the danger of which action their immature judgment opposes no warning or defense." Bearing in mind that this pole was located on a public highway, and at a place where children of the neighborhood might reasonably be expected to play, and recognizing the well-known attractiveness to children of anything in the nature of a swing, we are of the opinion that there was enough in the evidence to support a conclusion on the part of the jury that the guy wire, hanging as it did, would reasonably be calculated to attract children and lead them to play with it, and that in such play it might reasonably be expected to be brought into contact with the high-power electric wires. There was also enough in the evidence to support the conclusion that the defendant by the exercise of reasonable care would have known of the condition of the guy wire. Under such circumstances, there would be enough to support a conclusion of negligence on the part of defendant in so maintaining the guy wire, for the defendant, as a reasonable person, would be charged, under such circumstances, with notice of all these things.

It cannot be doubted, however, that the question whether this guy wire, hanging as it did, free from danger to any one who did not deliberately pick it up and carry it to a point where it would come in contact with the electric wire, would be likely to attract children and lead them to play with it, the question whether in such play it might reasonably be anticipated that it would be brought in contact with the electric wire, and the question whether the defendant by the exercise of reasonable care would have known of the condition of the guy wire, were, in the condition of the evidence, questions for the jury. The evidence was not such that these questions or any of them could be answered one way or the other *as matter of law.*

Under the circumstances of this case and in view of what we have said, there can be no question that instruction VI given at the request of plaintiff was prejudicially erroneous. That instruction, after declaring the duty of a person or corpora-

tion using the public streets for its business to use due care toward the public, proceeded as follows: "If you find that electricity is a highly dangerous and subtle agency giving no evidence of its existence in deadly quantities until the fatal stroke; if you find that defendant conducted a current of electricity of great intensity and power over wires running along the public street as alleged in plaintiff's complaint, and also maintained a guy wire or rope without insulation attached above said electric wires so conveying said electric current, its lower end reaching to the public streets and lying thereon and such wire or rope hanging in such close proximity to said electric wires that children playing with such guy wire or rope might readily draw it against such electric wires, *I instruct you that such act on the part of defendant constituted negligence and unless the two children of plaintiff were both guilty of contributory negligence you should render a verdict for plaintiff.*" Manifestly this instruction directed a verdict for plaintiff on account of the death of Albert, upon the finding by the jury of the various facts specified therein.

Bearing in mind that there is no pretense that defendant actually knew of the condition of the guy wire, it is clear that the word "maintained" could not be taken by the jury as meaning anything more than a mere failure on its part to obviate the defects in such condition by reason of the end having become detached from the tree or stump, regardless entirely of whether or not its admitted ignorance of the condition was due to a failure on its part to exercise reasonable care in the matter of inspection. In other words, so far as this particular element is concerned, the jury was practically instructed that it was enough to convict defendant of negligence, that the guy wire was hanging from the top of the pole with one end on the ground, although defendant had originally fastened such ground end to a tree or stump, had no knowledge that the condition had been changed, and had exercised due care in the matter of inspection to see that its poles and wires continued in a condition free from danger to others. Whether or not the defendant exercised due care in the matter of inspection to discover defects was, upon the evidence given in this case, solely a question for a jury, and the court could not properly take that question from it. A similar error occurred in the giving of instruction V, where the word "permitted"

was used instead of the word "maintained." It is barely possible that in view of the finding of the jury that this guy wire had been detached from the stump or tree "for two weeks or more," these errors might be deemed non-prejudicial, for it may be that, considering the dangerous nature of the agency used by defendant, a failure to discover the change in condition for a period of "two weeks or more" could be held as matter of law to be negligence. But it is not necessary to decide this question, for instruction VI was certainly in other respects to be noted prejudicially erroneous, and on a new trial the errors above referred to may easily be obviated.

This instruction takes entirely from the jury the question whether the guy wire in the locality where it was and hanging as it did would be likely to attract children and lead them to play with it, and the question whether in such play it might reasonably be anticipated that the guy wire would be brought into contact with the electric wire. Unless both of these questions are answered in the affirmative, defendant, under the circumstances shown by the evidence, was not guilty of negligence in any respect material in this case. By omitting these elements from a specification of the things that would warrant a verdict for plaintiff, in an instruction directing a verdict for plaintiff if the jury finds the specified things, the trial judge decided both of these questions against defendant, and directed a verdict in favor of plaintiff regardless of the views of the jury on such questions, and this in a case where clearly the evidence was not such as to compel answers against defendant as matter of law. It is clear that an instruction directing a verdict for the plaintiff in the event that the jury finds certain facts to be true, must embrace all the things necessary to show the legal liability of the defendant and to warrant the direction or conclusion contained therein that plaintiff is entitled to a verdict, and such is the rule in this state. (See *Killelea v. California etc.* Co., 140 Cal. 602, [74 Pac. 157].) This instruction practically directed a verdict in favor of plaintiff although the jury might conclude, upon evidence sufficient to support their conclusion, that the guy wire hanging as it did was not of such a nature and so situated that it could reasonably have been anticipated that it would attract or induce children to employ it as a plaything, or that in such play it would be brought into contact with the electric wire. We have

not been able to find anything in the record that would warrant us in holding that this instruction was not prejudicial to the substantial rights of defendant, nothing to overcome the effect of this explicit direction for a verdict in favor of plaintiff if the jury finds the facts specified therein, and contributory negligence on the part of the children is not shown. It is true that other instructions were given at the request of defendant that stated the law in these respects as favorably to defendant as was warranted, if not more favorably. But the giving of these other instructions simply produced a clear conflict in the instructions given the jury by the court, and it is impossible for us to say which instruction the jury followed in arriving at a verdict in favor of plaintiff. Learned counsel for plaintiff make no reply to the claim of defendant in this behalf.

There is some force in the further contention of defendant that this instruction directs a verdict for plaintiff for damages on account of the death of Albert, even if Albert was guilty of contributory negligence, provided Walter was not so guilty. Such a direction would, of course, be erroneous. In the event of a new trial such an error will undoubtedly be avoided.

We see nothing, in view of the facts of this case, in the points made by defendant against plaintiff's instructions VIII and XIV. Plaintiff's instruction XV was in part somewhat argumentative and the portion stating that "boys can seldom be said to be negligent when they merely follow the irresistible impulses of their own nature and instincts common to all boys" might well have been omitted, being altogether too uncertain for the purposes of an instruction and partaking too strongly of the nature of argument.

The concluding portion of plaintiff's instruction XVI, the portion purporting to enumerate facts upon the finding of which it would be the duty of the jury to find the defendant guilty of negligence is, as set forth in the transcript, absolutely unintelligible. It is: "and if you therefore find that the defendant in arranging and maintaining its electric wires and in permitting the existence of the guy wire alleged in plaintiff's complaint, in such dangerous proximity thereto as to reasonably anticipate that children upon the street might bring the same in contact with the said wires and that said wires were improperly insulated, it is your duty to find that

the defendant was negligent, in so maintaining such a condition of affairs." The unintelligibility herein is doubtless the result of a clerical error. As the record shows this instruction, it is also open to the objection of intimating that the defendant did in fact permit the existence of the guy wire in such dangerous proximity to the electric wire that it should reasonably have anticipated that children upon the street might bring the same in contact with such electric wire.

Upon the question of contributory negligence upon the part of Albert, specific instructions given by the trial court were of such a nature as to absolutely preclude, in view of the evidence, a verdict on account of his death. By instruction XXXII, the jury was instructed that if the jury found that if the children had not carried the guy wire towards the center of the street for the express purpose of receiving electric shocks, but had simply played with it around the pole, they would not have been killed, and that the only reason for their deaths was their own act in expressly causing the wire rope to come into contact with the overhead electric power wire for the purpose of receiving electric shocks, the act of the children and not the negligence of the defendant, if any there was, was the proximate cause of their death, and its verdict must be for defendant. By instruction XXXIII the jury was instructed that if simply playing with the guy wire, in ordinary play, would not have caused a contact of the wires, but that they came in contact by reason of the direct and premeditated act of the deceased children, the act of the children was the proximate cause of their death, and verdict must go for the defendant. By instruction XLIV the jury was instructed that if it found that the deceased children knew, before they carried the wire rope out toward the street car tracks, that by so doing they would bring it into contact with the live wire, and that they would then receive electric shocks, which might injure them, and that they would not have been killed if they had not committed this act. then it must find that the children came to their death through their own negligence and a verdict must be for the defendant. By instruction XLV the jury was instructed that if it found that neither the wire rope nor the electric wire placed as it was, could alone have caused the death of plaintiff's children, and if it found that it was the act of the deceased children themselves that

brought the other elements together, thus causing the result complained of, to wit, the charging of the wire rope with electricity so as to cause their deaths, then the proximate cause was the act of the children, and the verdict must be for the defendant. By instruction LVII, the jury was instructed that if Albert was warned not to touch the wire rope and did thereafter take hold of it upon being dared by one of the other boys, and if it further found that he knew that he would get shocked by so taking hold of said rope, but that he nevertheless did so with the result that he was killed, then Albert met his death through his own negligence, and the verdict must be for the defendant. Instruction XLV was practically a direction for a verdict for defendant, so far at least as Albert was concerned, for there never was even a pretense in the case that either the electric wire or the guy wire could cause injury so long as they were not brought in contact with each other, or that it was not the act of Albert that brought them together. While the instruction was too favorable to defendant, unless Albert was shown by the evidence to have been guilty of contributory negligence as matter of law, it was one of those given to the jury. The other instructions referred to, with the possible exception of instruction XLIV, were, practically, as we view the evidence, also instructions for a verdict in favor of defendant, for notwithstanding one or two answers of the jury to questions submitted, the evidence was such, as we view it, to compel a verdict for the defendant if these instructions were followed by the jury. These instructions, according to our opinion, were also too favorable for defendant, for we do not believe that it can be held as matter of law, either that Albert had attained such an age that he was not within the protection of the "attractive nuisance" doctrine, or that he was guilty of contributory negligence. We think that it was a question for the jury whether the defendant should reasonably have anticipated that the contrivance was of such a nature that it would naturally attract children as old as Albert to play with it, even to the extent of endeavoring to obtain electric shocks, without any realization whatever of the extent of the danger to which they were exposing themselves, and that it was also a question for the jury whether Albert did not exercise that degree of care to avoid injury that a child of his age should exercise under the circumstances shown in this case. It is of

course apparent that, as a matter of fact, he had no idea of the extent of the danger to which he was subjecting himself, and it would be entirely reasonable to infer that he could have anticipated no serious bodily harm, nothing more serious than his predecessor, Sylvester and Clark MacChesney, had suffered. He was bound to the exercise of such care as children of his age ordinarily exercise, and we think that the evidence was such as to make this question one for the jury to determine. We are not to be understood as declaring that the judgment against defendant should be reversed because instructions too favorable to defendant were given, but have deemed it proper to discuss these instructions for the purposes of a new trial.

For the same purposes, it is proper to say that the evidence as to Walter was such as to warrant a finding that he was not guilty of contributory negligence, if, indeed, it did not compel such finding. Whether or not a recovery could be had on account of Walter's death, assuming that he was not guilty of contributory negligence, depends entirely, we think, upon the question whether or not there was any negligence on the part of defendant in so far as Albert was concerned, regardless entirely of whether Albert was guilty of contributory negligence. In other words, defendant cannot be liable for Walter's death, caused by his effort to save Albert from injury, however praiseworthy that effort was, unless Albert's dangerous condition was due, in part at least, to defendant's negligence. Unless defendant was guilty of negligence toward Albert, it could not be liable at all under the undisputed facts of this case. But if it was guilty of negligence toward Albert, in maintaining the condition of affairs shown by the evidence in this case, then the mere fact that Albert's negligence, if there was such negligence on his part, contributed to his death, would not free defendant from liability as to Walter, unless Walter was also guilty of contributory negligence.

Evidence that a defendant in an action for damages is insured against loss by reason thereof is not admissible (*Roche v. Llewellyn Iron Works Co.,* 140 Cal. 563, [74 Pac. 147]), and it would undoubtedly be improper for counsel for plaintiff to endeavor to get such a fact before the jury by question designed solely for that purpose. While it is entirely proper for counsel to ask jurors such questions as may reasonably be

necessary to ascertain whether they are free from bias or interest that may affect their verdict, we do not think that it is ordinarily essential to ask questions in such a way as to bring the fact of such insurance before the jurors. Counsel should be fair toward the court and the defendant in such matters, and unfairness on their part having the effect of bringing the fact of insurance to the attention of the jury might well be regarded as prejudicial misconduct. We are not to be understood as intimating that the attorneys for plaintiff were intentionally unfair in this respect, for the record does not so indicate to us.

As to the matter of the measure of damages in an action by a mother for the death of her minor child it is unnecessary for the purposes of a new trial to do more than to cite the recent case of *Bond* v. *United Railroads etc.*, 159 Cal. 270, [113 Pac. 366].

There is no other matter that appears to require discussion. The judgment and order denying a new trial are reversed.

Henshaw, J., Melvin, J., and Shaw, J., concurred.

Mr. Justice Sloss deems himself disqualified to participate herein, and therefore declines to act.