[No. 5617. Decided September 28, 1905.]

WALDEMAR P. WESTBY, *Respondent*, v. WASHINGTON BRICK, LIME & MANUFACTURING COMPANY, *Appellant.*[1]

MASTER AND SERVANT—NEGLIGENCE—INJURY TO EMPLOYEE IN ROLLER CRUSHER—STARTING MACHINERY WITHOUT WARNING—VERDICT ON CONFLICTING EVIDENCE—REVIEW. A verdict of a jury upon the question of the negligence of the defendant and the contributory negligence of the plaintiff, in a personal injury case, will not be disturbed where it appears that the plaintiff was injured in a roller crusher by the starting of machinery which he was oiling, by reason of the fact that no warning was given, and there was conflicting evidence upon the question as to whether the customary warning was given.

RELEASE AND DISCHARGE—PROCURED BY FRAUD—VERDICT—REVIEW. The release of a claim for personal injuries secured by fraud is no defense to an action for damages, and the appellate court will not weigh conflicting evidence as to such release where there was sufficient testimony of fraud, if uncontradicted, to sustain the verdict.

[1]Reported in 82 Pac. 271.

Master and Servant—Negligence—Indemnity—Fact That De-
fendant Carries Accident Insurance—Interest of Witness—Mis-
conduct of Counsel. It is prejudicial error in a personal injury case
for the plaintiff's counsel to continually ask questions with the evi-
dent intent to get before the jury the fact that the defendant carries
accident insurance, and it is immaterial that the questions were
asked for the purpose of impeaching the testimony of a witness.

Appeal from a judgment of the superior court for Spo-
kane county, Belt, J., entered June 29, 1904, upon the
verdict of a jury rendered in favor of the plaintiff for $3,200
for personal injuries sustained by an employee through the
starting of a roller crusher without warning. Reversed.

*Danson & Huneke,* for appellant.

*Robertson, Miller & Rosenhaupt,* and *B. M. Branford,*
for respondent.

Dunbar, J.—The respondent, a young man, twenty-four
years old, had the tips of his fingers caught in a roller
crusher in a brick factory, which was owned and operated
by the appellant, in Spokane county. His left arm was
drawn through the roller crusher, badly breaking and
mangling it, and tearing the ligaments so that the arm
had to be amputated; also, mangling his shoulder to a cer-
tain extent, where the crusher stopped. The complaint
alleged negligence on the part of the defendant, in that it
furnished the plaintiff with defective machinery to work
with, and that it failed to give the notice of the starting
of the engine which set in motion the machine, which the
plaintiff was oiling, so that he could have time to escape
the dangerous cog wheels which were the cause of his in-
jury; alleged that the defendant had adopted a rule of warn-
ing, which the plaintiff relied upon, and that said warning
was not given him on the morning on which the accident
occurred. Upon the trial of the cause, on the completion
of the plaintiff's testimony, defendant moved for a nonsuit;
which motion was refused by the court. Again, at the

close of the whole testimony, the motion was renewed and
refused; the jury returned a verdict in favor of plaintiff
for $3,200, judgment was entered upon such verdict, and
from such judgment, this appeal is prosecuted.

The errors assigned are, (1) the refusal of the court to
grant defendant's motion made at the end of plaintiff's
case; (2) the failure of the court to grant defendant's motion
made after all the testimony was in; (3) the failure of the
court to grant defendant's motion for a new trial; (4) error
of the court in refusing to give instruction No. 1, requested
by the defendant, said instruction being that the jury re-
turn a verdict for the defendant.  When the case was sub-
mitted to the jury, the court, for reasons which do not
appear in the record, withdrew from the jury the question
of defective machinery.  This order of the court was ex-
cepted to by the plaintiff, but as the plaintiff has not ap-
pealed, the judgment having been in his favor, it is not
necessary for us to pass any opinion on the correctness of
such order.

Most of the assignments of error can be noticed together,
as they all practically involve the question whether or not
the testimony showed negligence on the part of the appellant,
or contributory negligence on the part of the respondent.
It may be stated here that the appellant in its answer, out-
side of the ordinary denials of negligence and assertion of
contributory negligence, alleged a settlement with the re-
spondent, wherein the appellant was released from all lia-
bility on account of the accident.  This was denied by the
respondent, who alleged that, if such release had been exe-
cuted, it had been executed at a time when he was unable
to contract, by reason of his bodily suffering, and that it
was a fraud perpetrated upon him by the appellant.

It is contended by the appellant that, by a rule and custom,
it blew two small whistles a few minutes before the engine,
which put the machinery of the factory in operation, com-

menced to work, and one large whistle when the work commenced; and that the testimony shows conclusively that this notice was given to the respondent. But if the testimony of the respondent and his witnesses is to be believed, the jury might well conclude, either that the whistle was not of sufficient volume to be heard at the place where the respondent was at work, in the performance of his duty oiling the machine which he was operating, or that the whistle was not sounded on that particular morning. The respondent also testified, and this testimony was corroborated by other of his witnesses, that it was the custom, before the belt was put on, to ask him if he was ready, and if he said he was, the belt was put on and the machinery started; and if he said he was not, the men above waited until he responded that he was ready; that it was the custom also to throw the belt off at night, and hang it up on a pulley, and that this morning, when he went to work, the belt was on and that he did not know that it was on, and was not questioned as to whether he was ready or not.

On the proposition of the settlement, the testimony is absolutely conflicting. But if the statements of the respondent and his witnesses are true, the execution of the alleged release was the perpetration upon him of a most flagrant and palpable fraud. These questions having been submitted to the jury, under proper instructions, there being no assignment of erroneous instructions, and the testimony being sufficient, if uncontradicted, to sustain a judgment, this court will not undertake to weigh such testimony. If it did, it would simply be the substitution of the judgment of this court for the judgment of the jury on the weight of the testimony and the credibility of the witnesses, a substitution not authorized by the law.

There is, however, one assignment of error, the rightful determination of which will, we think, necessitate the reversal of this cause, and that is the alleged misconduct of

the respondent's attorney at the trial of said cause, whereby appellant was prevented from having a fair trial. J. H. Spear, manager of the appellant corporation, had testified in relation to the alleged settlement with the respondent, that he had paid certain bills by check. Counsel for the respondent, on cross-examination, made the following interrogatory statement:

"Now, as a matter of fact, sir, every dollar of that money was paid by other parties, the insurance company? Answer: No, sir. Question: Were you not insured? Mr. Danson [appellant's counsel]: We object as immaterial. It is not a proper question and he knows it. The Court: Sustain the objection."

Many more questions were asked by counsel for the respondent upon the same line, with relation to settlements made by the company with one Albert Lutness, where the question was asked: "Now, is it not a fact that every dollar in the Lutness suit was paid by the Casualty Company of Maryland, instead of by the Washington Brick & Lime Company?" This subject was pursued by counsel notwithstanding the continuous objections and overruling of this character of questions by the court. It is earnestly contended by the respondent that the questions were asked for the purpose of impeaching the veracity of the witness Spear; that, inasmuch as he had said that he had paid it, they had a right to show thát somebody else paid it. But we do not think there is any merit in this argument. The whole examination shows that it was made for the purpose of getting before the jury the fact that an insurance company, and not the local defendant in the case, would be called upon to respond to such damages as the jury assessed; and the case we think falls squarely within the spirit of the rule announced by this court in *Iverson v. McDonnell*, 36 Wash. 73, 78 Pac. 202; *Lowsit v. Seattle Lumber Co.*, 38 Wash. 290, 80 Pac. 431; and *Stratton v. Nichols Lumber Co.*, 39 Wash. 323, 81 Pac. 831.

For error in this respect, the judgment will be reversed, and the cause remanded for a new trial.

MOUNT, C. J., ROOT, and HADLEY, JJ., concur.

FULLERTON, J., took no part.