[No. 8291.   Department Two.   January 27, 1910.]

MADRONA GROCERY COMPANY, *Respondent*, v. OSCAR E. WALLIN *et al.*, *Appellants*.[1]

TRIAL—MISCONDUCT OF ATTORNEY—QUESTIONS TO SHOW INDEMNITY OF PARTY. In an action against a constable for the wrongful seizure of property under execution, it is not misconduct of the plaintiff's counsel, or prejudice warranting a new trial, that he asked the constable "why he did not obtain an indemnity bond" when he found that the plaintiff claimed the property, and "you did not obtain any security prior to your levy, did you," objections to which were sustained; as the questions did not intimate that the party was indemnified, but rather the contrary, and no prejudice was shown.

Appeal from a judgment of the superior court for King county, Tallman, J., entered January 15, 1909, upon the verdict of a jury rendered in favor of the plaintiff, in an action for damages for wrongful seizure of personal property under an execution. Affirmed.

*Murphine & Collins*, for appellants.
*Herchmer Johnston,* for respondent.

CROW, J.—This action was commenced in the superior court of King county by the Madrona Grocery Company, a corporation, against Oscar E. Wallin, constable of Kirkland precinct, and his official bondsmen, to recover damages for an

[1]Reported in 106 Pac. 617.

unlawful and wrongful seizure of personal property belonging to the plaintiff. From a judgment in favor of plaintiff, the defendants have appealed.

Appellants' only contention is that respondent's attorney was guilty of misconduct sufficient to warrant a reversal and the granting of a new trial. The record discloses, that Wallin as constable, acting under an execution issued against A. F. Flannigan and Fred Flannigan, seized and sold certain personal property claimed by the respondent, and the only issue tried was whether the personalty so seized was its property or that of the judgment debtors named in the execution. The alleged misconduct occurred on the cross-examination of the appellant Wallin, as follows:

"Q. When you went up there with that execution, Mr. Wallin, and Mr. Farr told you that that property belonged to the Madrona Grocery Company, what did you say to him? A. Why, they said the same thing as all of them do, and I have served, I guess, some three hundred executions. They claim another party owned the goods. Q. Well, when Mr. Flannigan told you it was not his property, what did you do? A. Well, they all say the same thing. Q. What did you say to him then? A. I asked them if they would sign an affidavit to that effect. They refused to do so. Q. Why didn't you ask for an indemnity bond when you had notice that this property—that there was a question about the title of it? A. I did. Mr. Casey (attorney for appellants): Just a minute, Mr. Wallin. I think that is entirely immaterial. The Court: Do you object? Mr. Casey: Certainly. The Court: Objection sustained. Q. You did not obtain any security prior to your levy, did you? Mr. Casey: Same objection. The Court: Objection sustained."

Counsel for respondent proceeded with the cross-examination on other matters, after which the record shows the following:

"Mr. Casey (attorney for appellants): Now, if the court please, at this time I want to enter an objection as to the conduct of counsel in trying to show that this witness, who is the defendant in the action, was indemnified by bonding by a surety company. The Court: Well, there is nothing of that

kind here that I know of. Mr. Johnston (attorney for respondent) : No, I never said anything of the sort. Mr. Casey: He asked a few minutes ago why he did not require an indemnity bond and if he had an indemnity bond and I objected to that as improper. The Court: The objection was sustained and the court did then, or, if not, it will now. instruct the jury to disregard it. Mr. Casey: I wish to take an exception to those statements, of the conduct of counsel. The Court: Exception allowed."

Appellants now insist that respondent's counsel, by his cross-examination, improperly attempted to show in the presence of the jury that the appellant had taken an indemnity bond; that by reason thereof some third person would have to pay any judgment that might be rendered against him, and that by reason of such misconduct the appellants are entitled to a new trial. In support of this contention, they cite numerous authorities, including the following cases from this court: *Iverson v. McDonnell*, 36 Wash. 73, 78 Pac. 202; *Lowsit v. Seattle Lumber Co.*, 38 Wash. 290, 80 Pac. 431; *Stratton v. Nichols Lumber Co.*, 39 Wash. 323, 81 Pac. 831, 109 Am. St. 881; *Westby v. Washington Brick, Lime & Mfg. Co.*, 40 Wash. 289, 82 Pac. 271.

On the record we think that no prejudice has been shown, and that appellants' contention is without merit. The theory on which this court decided the several cases cited was that counsel for the plaintiffs in personal injury cases improperly attempted to show that the defendants therein had casualty or indemnity insurance; that they would not be compelled to satisfy any judgments that might be rendered against them, and that such attempts, although made under other pretenses, were in reality for the improper purpose of creating prejudice in the minds of the jury. In each case the conduct and surrounding circumstances were such as to give the jury a direct intimation that the defendant had actually obtained such indemnity insurance, and was thereby protected from loss. In *Iverson v. McDonnell, supra*, this court said:

"It is true, the respondent said, when the objection was made that the question was asked for the purpose of affecting

the credibility of the witness; that he wished to know what his interests were in the case. But it seems to us it plainly appears that the purpose of the question was to get before the jury, not testimony affecting the credibility of the witness, but testimony showing that the judgment would be paid by the insurance company instead of by the appellant. There was no question about the interest of the witness McDonnell. He was the defendant in the case, had testified that he was, and that he was the owner of the mill and the employer of the plaintiff in the case. And the testimony sought to be elicited by the counsel for respondent, instead of affecting his credibility by showing the responsibility of the insurance company for the judgment, would tend to strengthen the testimony of the witness by showing that he had no interest in the result of the case. Hence, it is not likely that the attorney for the respondent asked these questions for the purpose of strengthening the testimony of the appellant in the case."

There is nothing in the record to show that appellant actually obtained an indemnity bond, nor was it suggested or intimated that he had done so, by any of the questions propounded by respondent's attorney. In fact, if the questions contained any suggestion on the subject, it was that the constable had failed to insist upon his legal right to an indemnity bond before proceeding with the levy. Rem. & Bal. Code, § 4003, relieves a sheriff, deputy sheriff, or coroner from liability for neglecting to serve any civil process, unless an indemnity bond be first tendered him if required. Rem. & Bal. Code, § 1888, provides that, when property levied upon is claimed by a third party, the sheriff or constable shall be entitled to demand a bond, and it is the ordinary rule that such officers may, before making a levy, demand an indemnity bond when they are in doubt as to the ownership of the property, or when it is claimed by a stranger to the execution. 25 Am. & Eng. Ency. Law (2d ed.), 685; *Howard W. Middleton Co. v. Souder*, 74 N. J. L. 87, 64 Atl. 975.

There was nothing in the form of either of the questions asked by respondent's counsel calculated to inform the jury that the constable had obtained an indemnity bond. If any

prejudice did arise, it would seem to have been caused by the language employed by appellants' attorney when he interposed his last objection, which was itself more prejudicial than either of the questions to which appellants objected. While we adhere to the rule announced in the cases cited, we do not think it can be applied to the facts now before us.

The judgment is affirmed.

Rudkin, C. J., Mount, Parker, and Dunbar, JJ., concur.