### 8293

### HORSFORD v. CAROLINA GLASS CO.

1. Nonsuit—Issues.—Where there is testimony on behalf of plaintiff tending to support the material allegations of the complaint, nonsuit should not be ordered; and where the testimony as to contributory negligence and assumption of risks is susceptible of more than one inference these defenses should be sent to the jury.

2. Evidence—Appeal.—Where testimony is objected to on the ground that it tends to show an offer of compromise and when that is disclaimed by the party offering it, a general objection is offered, a specific objection will not be considered on appeal.

3. Ibid.—Attorneys.—Where attorneys bring out in evidence matter universally recognized as extraneous and highly prejudicial and comment on it in argument, although the question not being subject to objection, a general objection was made to the answer and no motion made to strike out, objection having been made to the argument and the attorney having been permitted to comment on the evidence adduced, a new trial should be granted. Here a new trial is granted because plaintiff's attorney brought out evidence tending to show the master carried employer's insurance and commented on the fact that the verdict might be paid by the insurance company.

4. Ibid.—Master and Servant—Safe Place.—Under an allegation that the master failed to furnish a safe place for the servant to work, evidence that there was not on a shaft a loose pulley which would have rendered it safe to try to put a belt on a revolving pulley, was competent.

5. Master and Servant—Safe Place.—The instruction here complained of as to the duty of the master in furnishing a safe place to work when considered with the whole charge is held free from error.

6. Jurors.—The Court may order the drawing of the jury for trial of one case proceeded with while only twenty-four jurors are present and before the extra *venire* ordered had been summoned and answered.

Before Wilson, J., Richland, October term, 1911. Reversed.

Action by W. E. G. Horsford against Carolina Glass Co. Defendant appeals on following exceptions:

1. "That his Honor erred in admitting in evidence, over the objection of the defendant, certain declarations or

admissions claimed to have been made by certain officers of the defendant company to the plaintiff, W. E. G. Horsford, as follows, to wit:

" 'Mr. Nelson: State whether or not the company ever said anything to you about paying your wages? They paid me my salary for a while. Why did they stop? Mr. Lyles: I object. Mr. Nelson: If they told you why they stopped, and if you had any conversation with Mr. Brewer, the manager, or Mr. Seibels, who was president, it is competent. I went to the glass works to get my pay, I thought I was still receiving it; when I got there I saw Mr. Brewer; he told me he had a conversation with Mr. Seibels and that he had said the insurance companies— Mr. Lyles: I object, and ask that that be stricken out; if there is anything objectionable under our law it is anything in the nature of a compromise; not competent. Mr. Nelson: We are not seeking to show a compromise. Just want to give the reason Mr. Seibels assigned to him for not paying him. The Court: Go ahead. Mr. Nelson: What did he say to you? Mr. Lyles: I object. The Court: Note exception. Mr. Lyles: This was long after the accident, and I don't know whether Mr. Brewer was then an officer of the company, but Mr. Brewer had no right or authority by admission of a statement at a late date, not anywise connected with this accident, to bind the company. Mr. Norton, I think, was the manager of the company at that time; this was long after the accident. Mr. Nelson: Instead of this being a compromise, it seeks to shirk liability; the answer will show no liability attached to them, and will give the reason. How long after you got out before you went down there? I had been down there several times before. How soon after Mr. Brewer had this conversation with you—how long after you were hurt? Some time. Was Mr. Brewer still down there? Was he in the office doing what he had been doing when you were there? That is what I suppose he was doing—that is what he was doing. What did he tell you? Mr. Lyles: I object.

Mr. Brewer said that Mr. Seibels said to him under liability of the insurance company weren't due me anything and would not pay me anything else, but Mr. Brewer said he was going to Mr. Seibels' office and that he would bring Mr. Seibels back and let me talk to him myself. Mr. Nelson: He said the insurance company— Mr. Lyles: I object. The Court: He has already stated what he said. Mr. Nelson: State what he said. Mr. Brewer told me Mr. Seibels had said something about the insurance company, liability insurance, not paying any sum; said not due me anything and would not pay me anything, but Mr. Brewer said: I am going to Mr. Seibels' office now, and I will bring Mr. Seibels back in a few minutes' time, and told me to wait, and I waited at the factory until Mr. Seibels came, and he came and he told me— You had a talk with Mr. Seibels, the president of the company? Yes, sir. He told me the insurance company claimed they were not due me anything and would not pay me any more time, and the company would not advance me anything, and that is when my pay stopped. That conversation was with which Mr. Seibels? Mr. John G. Seibels, the president of the company.'

"Whereas, his Honor should have excluded the testimony for the reason: (a) that such declarations or admissions by officers of the company a long time after the injury to plaintiff were not competent evidence to bind the defendant company, and the further reason, (b) that they were declarations tending to establish an attempted compromise, and the further reason, (c) that they were evidently attempted to be introduced for the purpose of establishing (as contended by plaintiff) that the defendant carried accident insurance covering the injury to plaintiff, so that the jury would conclude that any verdict they might render would be paid by the accident insurance company and not by the defendant.

2. "That his Honor erred in refusing the defendant's motion for a new trial made upon the twelfth ground, as follows, to wit:

" 'That his Honor erred in allowing plaintiff to testify to an admission of Mr. Brewer to the effect that the defendant would pay all expenses and everything plaintiff wanted, after the defendant had objected for the reason that Mr. Brewer had no authority to bind the defendant by an admission made after the accident.'

"Whereas, his Honor should have set aside the verdict and granted a new trial for the reasons therein stated.

3. "That his Honor erred in refusing the defendant's motion for a new trial made upon the eighth ground, as follows, to wit:

" 'That his Honor erred in allowing, over defendant's objection, plaintiff to testify to an admission alleged to have been made by Mr. Brewer long after the injury to plaintiff, and also in allowing plaintiff to testify, over defendant's objection, to an alleged admission by Mr. Seibels long after the accident, both of which had reference to the accident liability insurance company, to which plaintiff's counsel referred in his argument, for the reason: (a) that it appeared that the admissions were made long after the injury to plaintiff, and for that reason were not binding upon the defendant, as neither Mr. Brewer or Mr. Seibels had authority to make an admission under such circumstances, and (b) that the plaintiff's counsel thereby sought to bring before the jury the fact that he claims to exist that the defendant had liability insurance, in order to prejudice the jury by a subsequent argument that the verdict would not fall upon the defendant, but upon the liability insurance company.'

"Whereas, his Honor should have set aside the verdict and granted a new trial for the reasons therein stated.

4. "That his Honor erred in refusing the defendant's motion for a new trial made upon the ninth ground, as follows, to wit:

" 'That the counsel for the plaintiff, in his closing argument to the jury, made remarks and drew inferences from

the testimony, not based upon the evidence or the issues in the cause, of a character calculated to inflame the passions and prejudice of the jury, after objection had been made to the use of such language and to the statements and argument of counsel, and after the Court had instructed him to confine himself to the record, the said remarks being to the effect that the jury should consider, in determining the amount of their verdict, that it would not sting the Glass Company, but would fall upon the accident insurance company, being practically a repetition of the statements and argument to which defendant's counsel had objected and which his Honor had ruled improper.'

"Whereas, his Honor should have set aside the verdict and granted a new trial for the reasons therein stated.

5. "That his Honor erred in refusing the defendant's motion for a new trial upon the ground set forth in the notice duly served upon plaintiff's attorneys, as follows:

" 'To Messrs. Nelson, Nelson & Gettys, Attorneys for Plaintiff: You will please take notice, that, upon the motion for a new trial, to be made before his Honor, John S. Wilson, the defendant will rely, in addition to the grounds based upon the minutes of the Court, upon the point that the counsel for the plaintiff in his argument to the jury went outside of the record, and made improper remarks to the jury of such a character as to prejudice and inflame them, and upon this point will use an affidavit, a copy of which is hereto attached. Shand & Shand, Lyles & Lyles, attorneys for the defendant,' and the affidavit of J. B. S. Lyles, attached to said notice, and statements of W. S. and P. H. Nelson. which are a part of the record in this cause.

"Whereas, his Honor should have granted the motion for a new trial upon the grounds and for the reasons set forth therein.

6. "That his Honor erred in allowing plaintiff's attorney, over the objection of defendant, to go outside of the record and improperly argue to the jury that some accident insur-

ance company, in nowise a party to this cause, would pay any verdict that might be rendered against the defendant, and thus to persuade and prejudice the jury that the defendant would not be injured by any verdict; and his Honor further erred in allowing such remarks without cautioning or charging the jury that they should not consider them or in some other manner relieving the defendant from the prejudice thereby created in the minds of the jury.

"Whereas, his Honor should have required plaintiff's counsel to keep within the record and refrain from such argument on outside matter of a character to inflame and prejudice the jury, and having failed in this, he should have cautioned and instructed the jury that such remarks were incompetent and improper and had nothing to do with the case, and that the jury should not consider them at all.

7. "That his Honor erred in refusing defendant's motion, made at the close of plaintiff's testimony, for a nonsuit upon the cause of action for punitive damages, as follows, to wit:

" 'Mr. Lyles: We ask for a nonsuit; first, as to the cause of action for exemplary or punitive damages, on the ground that there is no evidence tending to establish the cause of action; * * * '

"The error being:

"(a) There was no evidence tending to establish such cause of action; and

"(b) That by the failure of his Honor to grant the motion, the defendant was misled and prejudiced in the presentation of its case to meet some such supposed evidence, when the plaintiff, by his counsel in open Court, at the close of all the testimony, voluntarily acknowledged that there was no such testimony, and withdrew the cause of action.

8. "That his Honor erred in refusing the defendant's motion for a new trial made upon the second ground, as follows, to wit:

" 'That his Honor erred, it is respectfully submitted, in refusing defendant's eleventh request to charge, as follows,

16—92

to wit: "The only defect alleged in the appliances furnished plaintiff is that the belt was too tight and too short." The error being that the only defective appliance alleged in the complaint was a belt too short or too tight, and it was error, therefore, not to so instruct the jury and to allow them to consider any other defect.'

"Whereas, his Honor should have granted the motion for the reasons therein stated.

9. "That his Honor erred in refusing defendant's eleventh request, as follows, to wit:

" 'The only defect alleged in the appliances furnished plaintiff is that the belt was too tight or too short.'

"The error being that this request set forth the proper construction of the complaint, and the defendant was entitled to have the cause submitted to the jury under such proper construction, that is, to have the jury limited to the issues raised by the pleadings, which were the only issues of which it had notice.

10. "That his Honor erred in refusing defendant's motion for a new trial made upon the first ground, as follows, to wit:

" 'That his Honor erred in refusing to charge defendant's tenth request, as follows, to wit: "There is no evidence that the defendant violated its duty to furnish plaintiff with a safe place to work." And thereby submitted and allowed the jury to consider the allegation and argument of counsel to the effect that defendant had failed to furnish the plaintiff with a reasonably safe place to work, when there was no competent evidence adduced to sustain this allegation in the complaint.'

"Whereas, his Honor should have granted the motion upon the grounds therein stated.

11. "That his Honor erred in refusing the defendant's tenth request to charge, as follows, to wit:

" 'There is no evidence that the defendant violated its duty to furnish plaintiff with a safe place to work.'

"The error being that there was no evidence from which a reasonable juror could conclude that the defendant had failed to furnish plaintiff with a safe place to work, and the plaintiff, bearing the burden of establishing this, the defendant was entitled to have this issue withdrawn from the jury.

12. "That his Honor erred in admitting, over the objection of the defendant, testimony by the plaintiff, W. E. G. Horsford, to the effect that the defendant had no loose or shifting pulleys on the shafting in question, and that with such loose or shifting pulleys the accident could not have happened, the said testimony being as follows, to wit:

" 'What is the shifting or loose pulley used for? Mr. Lyles: I object. The only allegation of any delict in this complaint, anything wrong with the machinery, was that the belt was too short. Incompetent for them to prove in any other particular except too short. The only allegation contained in any one of these subdivisions is that the belt was too short. Mr. Nelson: In failing to furnish a safe place to work and in requiring him to work endeavoring to place a belt around the two pulleys, one of which was revolving rapidly, we submit it is proper to show wherein that was unsafe. Proper to show if a loose pulley or lever was there, that that was the proper construction and that would have made it safe. The Court: I think so. Mr. Lyles: Note exception. Mr. Nelson: State whether or not there was any loose pulley there? No, sir, no loose pulley. If a loose pulley was there would that make it perfectly safe? Mr. Lyles: I object. The Court: Leading. Mr. Nelson: State whether or not if a loose pulley was there would it make it safe? If a loose pulley had been there, would have had a lever to push the belt on and it would have been safe. Mr. Nelson: That loose pulley or lever, what is the operation for changing the belt from a loose pulley to a revolving pulley? Mr. Lyles: I object; there is no allegation of such defective machinery in the complaint. A safe place to work is a separate thing from unsafe appliances. The only allegation

of unsafe machinery of which we have notice is that the belt was too short. It does not say that the machinery was defective in that there was no shifting pulley. Mr. Nelson: Counsel had the right to move to make this complaint more certain and definite; he could have done that and we would have been obliged to say, and in failing to furnish a safe place to work. The Court: Go ahead, Mr. Nelson. Mr. Nelson: Where they have a loose pulley and lever or a shifter, what is the operation to transfer the belt from the loose pulley to the stationary pulley? Mr. Lyles: I object. If you have a loose pulley, that lever or shifter is fixed so that when you press the shifter you push it over and that will slide the belt on to the tight pulley, from the loose pulley to the tight pulley, and don't have to touch the belt, just this lever. If you have no loose pulley or shifter or lever, tell us whether or not you have to handle the pulley with your hand to put on the pulley? Yes, sir, if you haven't got a loose pulley you cannot get it on without putting your hands on. Where they have a loose pulley is there any danger in transferring the belt? No, just pull the lever over and that shifts the belt. Did they have a loose pulley or a lever down there at that time? No, sir. Mr. Lyles: Your Honor understands I am objecting to all these questions? The Court: Yes; go ahead. Mr. Nelson: In pulling the belt over the pulley which operated the air compressor, was it necessary to use the hand? Yes, sir.'

"Whereas, (a) his Honor should have sustained the objection of the defendant, that there was no allegation in the complaint that the machinery was defective in any other respect than that the belt was too short or too tight, and the plaintiff, having thus specified in his complaint the delict or acts of negligence of the defendant, his Honor should have ruled this testimony incompetent and should have excluded the same; and (b) the plaintiff, not having established that it was customary or at all necessary to have loose or shifting pulleys, or that the machinery was in any manner not reason-

ably safe without them, his Honor should have excluded the testimony for the reason that it did not tend to establish any negligence on the part of the defendant in the particulars specified in the complaint.

13. "That his Honor erred in refusing defendant's motion for a new trial made upon the third ground, as follows, to wit:

" 'That his Honor erred in admitting, over the objection of defendant, the testimony of the plaintiff to the effect that there were no loose or shifting pulleys on the shafting in question. The error being: (a) that the only defect in the machinery alleged in the complaint was that the belt was too short or too tight and no defect in the shafting or pulleys was alleged, and (b) that the plaintiff did not endeavor to establish that shafting and pulleys of this character, without the shifting pulleys, were unreasonably unsafe and dangerous or that shifting pulleys were customary or reasonably necessary for such purpose, and the testimony merely tended to confuse and mislead the jury in violation of his Honor's charge that the defendant was merely under a duty to furnish reasonably safe machinery and reasonably safe place to work.'

"Whereas, his Honor should have set aside the verdict and granted a new trial for the reasons therein stated.

14. "That his Honor erred in refusing defendant's motion, made at the close of plaintiff's testimony, for a nonsuit upon the whole case, as follows, to wit:

" 'Mr. Lyles: * * * ; we ask for a nonsuit on the whole case, upon two grounds, first of which is that there is no evidence tending to establish the violation of any duty owed by the defendant to the plaintiff that approximately resulted in damages to the plaintiff, or the violation of any duty owed by any servant, for the violation of which duty the defendant is responsible under law * * * .'

"Whereas, his Honor should have granted the motion upon the grounds therein stated.

15. "That his Honor erred in refusing to direct a verdict for the defendant as requested by the defendant in its third request to charge, as follows, to wit:

" 'The jury is instructed to find a verdict for defendant, as there is no evidence tending to establish the violation of any duty owed plaintiff by defendant, directly and proximately resulting in damage or injury to plaintiff.'

"Whereas, his Honor should have directed a verdict for the defendant as therein requested.

16. "That his Honor erred in refusing to direct a verdict for the defendant as requested in defendant's fourth request to charge, as follows, to wit:

" 'The jury is instructed to find a verdict for defendant for the reason that the evidence admits only of the inference that the plaintiff's injuries were caused by the negligence of a fellow-servant not in the performance of any duty owed by defendant to plaintiff.'

"Whereas, his Honor should have directed a verdict for the defendant as therein requested.

17. "That his Honor having charged the defendant's ninth request to charge, as follows, to wit: 'A defect in machinery or appliances furnished by the master is not to be presumed from the mere fact that it failed or broke in use. The plaintiff must establish such defect by the preponderance of the testimony,' he erred in failing to direct a verdict for the defendant as requested in defendant's first request, as follows, to wit:

" 'The jury is instructed to find a verdict for defendant.'

"The error being that his Honor, having adopted for the law of the case the rule set forth in defendant's ninth request, there was no evidence from which a reasonable man could infer that there was any defect in the machinery or appliances furnished by defendant, and there was, therefore, a failure of evidence to establish any defect in the machinery or appliances, and consequently a failure to

establish any breach of duty owed by the defendant to the plaintiff under the allegations of the complaint.

18. "That his Honor erred in modifying or changing defendant's seventh request, which read as follows: 'The master is not under an absolute duty to furnish his servant with a safe place to work and safe machinery and appliances. He owes merely the duty of ordinary care to do so—that is, of furnishing such a place to work and such machinery and appliances as a man of ordinary sense and prudence would furnish under similar circumstances,' and in charging the same in the following form:

" 'Now for the defense, I charge you as follows: "7. The master is not under an absolute duty to furnish his servant with a safe place to work and safe machinery and appliances"—not under an absolute duty, because, as I have tried to illustrate, it may be such work that the master cannot guarantee safety, cannot guarantee safety to the employee, but only to furnish what is reasonably safe and suitable under suitable circumstances. I charge you that.'

"The error being that the charge as requested stated a correct proposition of law, absolutely applicable to the issues raised by the pleadings and the testimony, which the defendant was entitled to have charged in the form requested; but in the form to which it was changed by his Honor it took away from the jury the proper test under which they should have determined the question whether the defendant was negligent in failing to furnish the plaintiff a safe place to work and safe machinery and appliances, to wit, the test of ordinary care, that is, the care that would be exercised by a man of ordinary sense and prudence, and instructed the jury to the effect that the master was not under an absolute duty to furnish a safe place to work and safe machinery and appliances only in cases where the work was such that the master could not guarantee safety to the employee, thus instructing them that the master was under an absolute duty in other cases.

19. "That his Honor erred in refusing to direct a verdict for the defendant as requested in defendant's fifth request to charge, as follows, to wit:

" 'The jury is instructed to find for the defendant, for the reason that the evidence admits only of the inference that plaintiff was guilty of negligence which contributed as a proximate cause of his own injuries.'

"Whereas, his Honor should have granted the request and directed a verdict for the reasons therein stated.

20. "That his Honor erred in refusing defendant's motion for a new trial made upon the fifth ground, as follows, to wit:

" 'That his Honor, having charged the defendant's eighteenth request, as follows, to wit: "If plaintiff had a choice of two ways to do the work in the doing of which he was injured—one safe and one dangerous—and he voluntarily chose the dangerous way and was injured thereby, as a proximate consequence of doing the work in this dangerous way, then he cannot recover." And this having thereby become the law of the case, and the evidence having conclusively established in the affirmative, the facts upon which this law was hypothecated, his Honor must, as a matter of law, set aside the verdict as being contrary to law.'

"Whereas, his Honor should have granted the motion for the reasons therein stated.

21. "That his Honor having charged the defendant's eighteenth request, as follows: 'If plaintiff had a choice of two ways to do the work in the doing of which he was injured—one safe and one dangerous—and he voluntarily chose the dangerous way and was injured thereby, as a proximate consequence of doing the work in this dangerous way, then he cannot recover,' and this having thus become the law of the case, it was error for his Honor to refuse to direct the jury to find a verdict for the defendant as requested in defendant's first request, as follows, to wit:

" 'The jury is instructed to find a verdict for defendant.'

"Because the only inference that could be drawn from the testimony was that the plaintiff had a choice between a safe and a dangerous way of doing the work, and that he voluntarily chose the dangerous way, and was injured as a proximate consequence of doing the work in this way.

22. "That his Honor erred in charging the plaintiff's fourth request, as follows, to wit:

" 'A servant is not ordinarily guilty of contributory negligence in obeying an order or rule of his master, unless the danger or peril of obeying such rule or order is so imminent or obvious that a man of ordinary prudence would not incur it. To show contributory negligence under such circumstances, it is not sufficient that the employee receiving the order should have misgivings and believe the act required to be hazardous, unless the danger is so imminent and obvious that a man of ordinary prudence would not incur it. If there is ground for reasonable difference of opinion as to the danger, the servant is not bound to set up his judgment against that of the master, whose orders he is required to obey, but he may rely on the judgment of his superior.'

"The error being that there was no evidence from which a reasonable man could infer that the plaintiff had been ordered to do the work in the manner in which he did it, since the plaintiff did not even claim that he had been instructed by a superior servant or officer to do the work in the manner which caused his injury, and it was, therefore, error to submit to the jury the issue whether his obedience to such an order excused him from the danger of the work that he undertook.

23. "That his Honor erred in charging the plaintiff's sixth request, as follows, to wit:

" 'A servant may, without inspection, assume and rely upon the assumption that the machinery and appliances furnished him by the master are safe and suitable, and he is

not ordinarily bound to exercise ordinary care to ascertain if they are so.'

"The error being:

"(a) That the evidence admitted only of the inference that the plaintiff had full opportunity, certainly as much so as his superiors, of observing any defects in the machinery and appliances furnished him, and it was not a case of superior knowledge of the defect on the part of the master;

"(b) That there was no evidence from which a reasonable man could infer that there was a defect in the machinery and appliances; and

"(c) That a servant is ordinarily bound to exercise ordinary care to inspect and ascertain if there are defects in the machinery and appliances furnished him, certainly except in cases of superior knowledge on the part of the master of hidden defects, and there was no evidence bringing this case within the exception.

24. "That his Honor erred in refusing defendant's motion for a nonsuit, made at the close of plaintiff's testimony upon the following grounds, to wit:

" 'Mr. Lyles: * * * We ask for a nonsuit on the whole case, upon two grounds * * * ; second, on the whole case. It is clear that the plaintiff is barred by his assumption of risk.'

"Whereas, his Honor should have held, from the plaintiff's testimony, that the plaintiff had assumed the risk of the injury he sustained, and should have granted the motion.

25. "That his Honor erred in refusing to direct a verdict for the defendant as requested in defendant's sixth request to charge, as follows, to wit:

" 'The jury is instructed to find a verdict for the defendant, for the reason that the evidence admits only of the inference that plaintiff assumed the risks of the injuries he sustained.'

"Whereas, his Honor should have granted the request and directed a verdict for the defendant for the reasons therein stated.

26. "That his Honor erred in refusing defendant's motion for a new trial, made upon the eleventh ground, as follows, to wit:

" 'That the verdict is so excessive that, coupled with the fact that it was returned by the jury in less than one-half hour after the case was submitted to them, and the further fact that the plaintiff sought only fifteen thousand dollars damages and voluntarily consented to the exclusion of punitive damages, it shows that it was the result of prejudice and caprice, and was not founded upon a mature deliberation of the issue presented.'

"Whereas, his Honor should have held that the facts therein stated, which appear of record in the cause, established as a proposition of law that the verdict was the result of caprice and prejudice, and should have granted the motion upon this ground.

27. "That his Honor erred in ordering and requiring the defendant, over the objection of its counsel, to proceed with the drawing of the jury and the trial of the case, when there were only twenty-four veniremen present, and he erred in refusing to postpone the trial until the extra venire had been summoned and had answered.

"Whereas, his Honor should have upheld the objection of the defendant and allowed a postponement of the trial until the extra venire had been summoned and had answered, so that the defendant would have had the benefit of a full venire from which to draw the jury."

*Messrs. Shand & Shand* and *Lyles & Lyles,* for appellant, cite: *The evidence should be confined to the acts of negligence alleged:* 33 S. C. 198; 45 S. C. 278; 55 S. C. 489; 57 S. C. 435; 76 S. C. 557; 89 S. C. 378. *Issues not raised by pleadings should not be sent to the jury:* 62 S. C.

1; 66 S. C. 246; 67 S. C. 136; 74 S. C. 102; 80 S. C. 407. *Defect in machinery is not presumed from its breaking or its failure to perform:* 72 S. C. 101; 78 S. C. 472. *A safe place differs from safe machinery and the allegation of one does not include the other:* 15 S. C. 457; 70 S. C. 470; 72 S. C. 100, 126, 346; Bailey Master's Liability, sec. 79. *There is no presumption of negligence in cutting the belt too short:* 81 S. C. 31; 78 S. C. 481. *Plaintiff must show the negligent servant was not a fellow-servant of his:* 51 S. C. 92; 84 S. C. 286. *Who are fellow-servants?* 72 S. C. 237; 71 S. C. 53; 22 S. C. 558; 87 S. C. 449; 70 S. C. 95; 71 S. C. 53; 77 S. C. 427. *The plaintiff and his fellow-servant were performing routine duty:* 72 S. C. 101, 264, 243; 77 S. C. 432; 78 S. C. 472. *The injury was caused by plaintiff's negligence in adopting an unsafe way:* 61 S. C. 468; 86 S. C. 69; 78 S. C. 472. *Instruction as to duty of servant to obey the master in apparent danger should not have been given here:* 15 S. C. 93; 62 S. C. 1; 66 S. C. 246, 16; 67 S. C. 136. *What risks the servant assumes:* 70 S. C. 470; 72 S. C. 237, 264, 347; 80 S. C. 238; 84 S. C. 287; 86 S. C. 70; 74 S. C. 424; 64 S. C. 212. *Statements made by officers of the company after the injury are not binding on it:* Jones on Ev., secs. 270, 360; Cook on Corp., sec. 726; 19 S. C. 373; 26 R. I. 48. *Offers of compromise are not generally admissible:* Jones on Ev., sec. 293; 82 S. C. 465; 88 S. C. 453. *Evidence as to employer's insurance was improperly admitted:* 172 N. Y. 507; 3 A. & E. Ann. Cas. 552; 80 Miss. 340; 50 S. W. 602; 36 Wash. 73; 86 Pac. 271; 38 Wash. 290; 81 N. Y. App. Div. 381; 201 N. Y. 479. *Remarks of counsel as to employer's insurance should have been omitted:* 80 S. C. 352; 84 S. C. 108; 77 S. C. 408; 187 N. Y. 135; 90 Me. 369; 3 A. & E. Ann. Cas. 552; 66 Hun. 630; 81 Pac. 131; 220 Penn. 49.

*Messrs. Nelson, Nelson & Gettys,* contra, cite: *Conversations relating to payment of expenses and wages were a*

*part of the res gestae:* 12 Rich. 650; 72 S. C. 253. *Ruling of presiding Judge in refusing the motion for new trial must be regarded as against the facts on which it was moved:* 85 Pa. 784; 16 L. R. A. (N. S.) 534; 80 S. C. 352; 54 S. E. 786, 911; 55 S. E. 1042. *Verdict was not prejudiced by testimony or argument:* 26 S. C. 117; 65 S. C. 242. *There was no error in sending to the jury the issue of master furnishing an unsafe place:* 41 S. C. 440. *Plaintiff need not show custom of other mills having loose pulleys:* 60 S. C. 153; 61 S. C. 468; 72 S. C. 420; 86 S. C. 229. *Plaintiff was doing the work according to the rule of the master:* 71 S. C. 56; 61 S. C. 489. *Instruction as to duty of master to furnish safe place is correct:* 84 S. C. 283; 89 S. C. 387; 65 S. C. 161; 72 S. C. 450; 78 S. C. 387. *Servant may assume master has exercised ordinary care in selecting machinery:* 66 S. C. 482; 73 S. C. 346; 72 S. C. 420.

August 12, 1912.   The first opinion was delivered by

MR. CHIEF JUSTICE GARY.   This is an action for damages, alleged to have been sustained by the plaintiff through the wrongful acts of the defendant, while he was employed to work in its glass factory.

The allegations of the complaint, material to the questions involved, are as follows:

"That on or about the 6th day of May, 1910, plaintiff was in the employ of the defendant, in the blowing room of its said factory, and was by defendant's manager, ordered to do certain work, in the blacksmith shop of said factory, to wit: to assist in placing a belt on the pulley which operates the air compresser, in said blacksmith shop, the belt being around a small pulley, which was operated by an electric motor, which pulley was revolving rapidly; plaintiff, together with other workmen, was ordered to put said belt around the larger pulley, which operated the air compresser.

"That said belt was too short or tight, to be operated on said pulleys, and upon its being placed around, or nearly around said large pulley, it was violently thrown therefrom, and violently struck this plaintiff on the face and head, and knocked him senseless to the floor, and the small pulley continuing to revolve at a great speed, caused said belt to beat and whip this plaintiff all over his person, bruising and battering him from head to foot.

"That the aforesaid injuries and damage to the plaintiff, were caused by the careless, negligent, reckless, wilful and wanton conduct of the defendant.

"In failing to furnish plaintiff a safe place to work, and in requiring him to work at, and endeavor to place a belt around two pulleys, one of which was revolving rapidly.

"In failing to furnish plaintiff safe appliances with which to work, and furnishing plaintiff a belt which was too tight or too short, to be operated with safety.

"In ordering and requiring plaintiff, to put said belt on said pulleys, when defendant knew, or should have known, that it was too tight and dangerous to operate.

"In ordering and requiring plaintiff and other employees, to place said belt on said pulley, while one of said pulleys was in motion."

The defendant denied the allegations of negligence and recklessness, and set up the defenses of contributory negligence, and assumption of risk.

The defendant made a motion for a nonsuit, which was refused. It also requested his Honor, the presiding Judge, to direct the jury to find a verdict in favor of the defendant, which request was also refused.

The jury rendered a verdict in favor of the plaintiff for $12,500.

The defendant made a motion for a new trial, which was refused, except in one particular. His Honor, the presiding Judge, ordered that a new trial be granted, unless the plaintiff would consent upon the record that the verdict be

reduced to $10,000. The plaintiff gave his consent, and the verdict was accordingly reduced.

The defendant appealed upon exceptions, which will be reported.

Before proceeding to consider the exceptions specifically, we will first dispose of those assigning error, on the part of the Circuit Judge, in refusing the motions for a nonsuit, and to direct a verdict for the defendant, on the grounds, that there was no testimony tending to sustain the material allegations of the complaint, or that the testimony showed that the plaintiff was guilty of contributory negligence or assumed the risk.

The "Case" contains 140 pages, and consequently the testimony is voluminous. We have considered it carefully, and have reached the conclusion, that there was testimony tending to sustain the material allegations of the complaint, and that the motions for nonsuit, and the direction of a verdict, were properly refused; also that the testimony tending to show contributory negligence and assumption of risk, was susceptible of more than one inference, and that these defenses were properly submitted to the jury.

A detailed statement of the testimony, would prolong this opinion to a great length, and no useful purpose would thereby be subserved.

We proceed to the consideration of the specific exceptions.

First, second and third exceptions. These exceptions relate to the admissibility of certain testimony. The objections to the testimony upon the trial of the case, and the errors assigned in those exceptions, do not correspond. The first objection to the testimony was, that it tended to show an effort to compromise, whereupon the plaintiff's attorneys disclaimed any such purpose. The other objections failed to state the grounds thereof, and, consequently, are not properly before this Court for consideration.

Fourth, fifth and sixth exceptions. These exceptions relate to remarks made to the jury by one of plaintiff's attorneys. The appellant's attorneys, in their argument, say: "The language to which these exceptions are directed is somewhat in dispute, and reference must be had to affidavit of J. B. S. Lyles, and statement of W. S. and P. H. Nelson. For the purposes of this argument, we are perfectly willing to confine ourselves, to the statement of the Messrs. Nelson, as we have no desire to raise an issue between counsel."

They then quote from the statement of Mr. W. S. Nelson, as follows, and base their argument upon the facts therein stated:

"In his argument to the jury, Mr. Nelson referred to testimony (checks and vouchers offered by plaintiff), to show payment to Horsford after his injuries, and referred to the testimony that Mr. Seibels had told Horsford, that they had liability insurance. I was sitting within a few feet of Mr. Nelson, and directed his attention to this part of the argument. At this point Mr. J. B. S. Lyles objected to the argument, and asked the Court to request counsel to keep within the record. Mr. Nelson called the attention of the Court to the testimony, whereupon the Court ruled about to this effect: 'Yes, keep within the record.' Mr. Nelson stated to the jury, in effect, that he did not wish to go out of the record, for it would be a ground for reversal if he did, for he thought the jury would give such a good verdict that he did not wish to run any chance of having it reversed. What Mr. Nelson did state to the jury was about this, that Mr. Seibels had stated that they had liability insurance; that we did not know whether these payments came from the glass company or insurance company. I did not understand the Court directed Mr. Nelson to desist from argument along the lines which was interrupted by Mr. Lyles, but after the interruption, further than making to the jury a statement, that he did not wish to go out of the record, I

am sure Mr. Nelson did not dwell upon this line of argument, and about all he did say was, that the Carolina Glass Company claims it has made certain payments to the plaintiff (referring to checks and vouchers offered in evidence), but Mr. Seibels said they had liability insurance, and we do not know whether the glass company or insurance company, actually paid these amounts; as we do not know, whether the glass company or the insurance company, had paid these bills, we did not know by whom the verdict would be paid, if the jury rendered one for the plaintiff."

When Mr. J. B. S. Lyles objected to the remarks of Mr. P. H. Nelson as to the matter of liability insurance, and asked the Court to request counsel to keep within the record, the Court so requested, whereupon counsel disclaimed any desire to go out of the record. No further objection was made to the line of argument pursued by counsel. Under these circumstances, the exceptions must be overruled.

Seventh exception. The cause of action for punitive damages was withdrawn, and the appellant's attorneys have failed to show wherein this was prejudicial to the rights of the defendant.

Eighth and ninth exceptions. It is only necessary to refer to the allegations of the complaint to show that these exceptions cannot be sustained.

Tenth and eleventh exceptions. What has already been said disposes of these exceptions.

Twelfth and thirteenth exceptions. One of the allegations of negligence, was the failure of the defendant to furnish the plaintiff a safe place to work, and the testimony was competent, for the purpose of showing the condition of the place.

Fourteenth, fifteenth, sixteenth and seventeenth exceptions. These exceptions make the point, that there was no testimony tending to establish negligence. What has already been said disposes of these exceptions.

17—92

Eighteenth exception. When this exception is considered, in connection with the entire charge, it will be found to be free from error.

Nineteenth, twentieth, twenty-first and twenty-second exceptions. In these exceptions the appellant contends that the evidence admitted only of the inference that plaintiff was guilty of negligence, which contributed to his injury as a proximate cause.

What has already been said disposes of this question.

Twenty-third exception. What has already been said disposes of this exception.

Twenty-fourth and twenty-fifth exceptions. These exceptions assign error, on the part of the Circuit Judge, in not holding that the plaintiff assumed the risk, and are disposed of by what has already been said.

Twenty-sixth exception. There is nothing in the record tending to show that the verdict was the result of prejudice or caprice.

Twenty-seventh exception. The appellant's attorneys did not argue this exception, but waiving such objection, it cannot be sustained.

I think the judgment of the Circuit Court should be affirmed, but as the other members of the Court are of the opinion that the fourth, fifth and sixth exceptions should be sustained, the judgment of the Circuit Court is reversed, and the case remanded for a new trial.

Mr. Justice Woods. I am unable to resist the conclusion that matter universally recognized as extraneous and highly prejudicial, in the trial of issues like those involved in this case, was brought into the evidence and argument against the objection of defendant's counsel, and that for that reason the defendant did not have a fair trial. There can be no doubt on the bench or at the bar that in an action by an employee against his employer to recover damages for personal injury both

reason and authority forbid bringing into the evidence or argument the fact that defendant is protected by employer's liability insurance. Such evidence or argument has a manifest and strong tendency to carry the jury away from the real issue and to lead them to regard carelessly the legal rights of the defendant on the ground that some one else will have to pay the verdict. This is the only reason that can be assigned for attempting to use such testimony and argument. One of the most manifest and pressing duties not only of Courts but of lawyers is to prevent influences of this kind from finding their way into the administration of justice. In the discharge of this duty the entire commonwealth is deeply concerned, for the use in evidence and argument of such influences produces injustice, and waste of the time and labor of Courts and juries at great public cost.

In this instance the evidence was brought out under the guise of a conversation between the plaintiff and Seibels, the president, and Brewer, the manager of the defendant company. Such a conversation as to any matter germane to the issue on trial was not subject to objection, but it was here used as a medium for getting before the jury prejudicial testimony entirely foreign to the issue. There was no ground for the defendant's counsel to object to the questions as tending to educe testimony as to insurance because the questions contained no reference to the subject and counsel could not anticipate that the answers would be incompetent. When the incompetent answer came, counsel did object generally, but the Court responded by saying that the answer was already out.

It is said, however, that the objection to the testimony cannot be sustained, because counsel did not move to strike out. The general rule is indisputably established that, when in the course of a trial incompetent statements of witnesses are brought in either from accident or when they might be reasonably, though erroneously, thought by counsel to be

competent, the only remedy that the Court can afford is to grant a motion to strike out and instruct the jury to disregard the testimony. The injury resulting from the jury having heard the incompetent statement is regrettable, but the trial cannot be stopped because of such accidents and mistakes liable to occur in every trial. *State* v. *Wideman,* 68 S. C. 119, 46 S. E. 769; *State* v. *Adams,* 68 S. C. 421, 47 S. E. 676; *Hagins* v. *Ætna Life Ins. Co.,* 72 S. C. 216, 51 S. E. 683; *Keys* v. *Winnsboro Granite Co.,* 76 S. C. 284, 56 S. E. 949.

But when testimony manifestly incompetent and prejudicial is adduced for the purpose of having such testimony influence the jury, the party who adduces it will not be allowed to hold his verdict and assert that the Court can do nothing against the unfair advantage of having the statement before the jury, beyond striking it out and instructing the jury to disregard it. In such case it does not lie in the mouth of the offending party to say, that, although he has brought in irrelevant and prejudicial testimony, the Court cannot entirely deprive him of the benefit of it. It makes no difference that defendant's counsel did not move to strike out the testimony. Had the motion been made and granted the plaintiff would still have had the unfair advantage of having testimony before the jury which he ought not to have offered. Justice can be satisfied only by the complete relief of a new trial. Reference to the subject in the argument was still more objectionable. In a written statement of facts made by Mr. W. S. Nelson, and accepted by counsel for defendant, it is said that Mr. P. H. Nelson stated in argument that "Mr. Seibels had told Horsford that they had liability insurance," that Mr. Lyles for defendant, "objected to the argument and asked the Court to request counsel to keep within the record," that Mr. Nelson called the Court's attention to the testimony on the subject, and the Court said: "Yes, keep within the record;" and in summing up Mr. Nelson's remarks, the statement

continues: "about all he did say was that the Carolina Glass Company claims it has made certain payments to the plaintiff (referring to checks and vouchers offered in evidence), but Mr. Seibels said they had liability insurance and we do not know whether the glass company or insurance company had paid these bills, and did not know by whom the verdict would be paid if the jury rendered one for the plaintiff."

The inevitable conclusion that a party should not be allowed to hold a verdict obtained under such circumstances is enforced and illustrated in many cases. With respect to testimony as to employer's insurance the Supreme Court of Mississippi said, in *Herrin* v. *Daly,* 80 Miss. 340, 31 So. 790: "It could not conceivably throw any light on the issue, and could have no other tendency than to seduce a verdict on the ground that an insurance company, and not the defendants, would be affected." In *Cosselmon* v. *Dunfee,* 172 N. Y. 507, 65 N. E. 494, the question was asked, "Do you know whether they carry insurance for accidents to their employees?" and the Court went to the extent of holding that the plaintiff should not be allowed to hold his verdict although the question was ruled out because by the question the plaintiff had improperly produced on the mind of the jury the impression there was such insurance. In the cases of *Iverson* v. *McDonnell,* 36 Wash. 73, 78 Pac. 202, and *Westby* v. *Washington Brick etc. Co.* (Wash.), 82 Pac. 271, similar questions were held to be ground for reversal. Other cases holding such evidence inadmissible are: *Roche* v. *Llewellyn Iron Works Co.,* 140 Cal. 563, 74 Pac. 147; *Prewill-Spurr Mfg. Co.* v. *Woodall,* 115 Tenn. 605, 90 S. W. 623; *Barrett* v. *Bonham Oil and Cotton Co.* (Tex.), 57 S. W. 602; *Lowsuit* v. *Seattle Lumber Co.,* 38 Wash. 290, 80 Pac. 431; *Blanchard* v. *Olds Gasoline Engine Works,* 142 Mo. App. 319, 126 S. W. 828.

The same rule has been applied to the argument. *Prewill-Spurr Mfg. Co.* v. *Woodell, supra; Hollis* v.

*United States Glass Co.,* 220 Pa. 49, 69 Atl. 55; *George A. Fuller Co.* v. *Darragh,* 101 Ill. App. 664; *Trembly* v. *Harden,* 162 Mass. 383, 38 N. E. 972; *Lone Star Brewing Co.* v. *Voith* (Tex. City App.), 84 S. W. 1100; *Coe et al.* v. *Van Why,* 33 Col. 315, 80 Pac. 894. In *Trembly* v. *Harden, supra,* the trial Judge refused to allow counsel to comment on evidence of the defendant himself that he had insurance, the Court saying: "We are of opinion that the Judge was right in this refusal. It does not appear that the defendant relied upon his insurance in any way as a defense to this suit, and very likely the fact of insurance was brought out in cross-examination. It was not a subject for legitimate argument to the jury."

It is not necessary for us to go to the extent that many of the Courts have gone on this subject. The principle on which all the Courts proceed is the same, namely, that such testimony or argument is not fair. For these reasons I think the Circuit Court should be reversed.

On the other points I concur in the opinion of the Chief Justice.

Mr. Justice Watts *concurs.*

Mr. Justice Fraser *concurs in the result.*

Mr. Justice Hydrick. I concur in this opinion as applied to the facts of this case. But I reserve my opinion as to whether such testimony would not be admissible in a case where it appeared that plaintiff's injury resulted from reckless, wilful or malicious acts of defendant. In such a case, it might be reasonably inferred that such conduct was induced by reliance upon the insurance, and, if punitive damages are awarded, the general rule is that all the facts and circumstances should be laid before the jury in order that they may the more intelligently and justly award proper punishment.